In re William A. and Cecelia B.
WHITE, Debtors.

Glenn R. NELSON, Trustee of the
Estate of William A. and Cecelia
B. White, Plaintiff,

v.

William A. and Cecelia B. WHITE, hus-
band and wife, and the marital commu-
nity composed thereof, Defendants.

Bankruptcy No. 82–02144.
Adv. No. A84–0219.

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

April 24, 1986.

Daniel R. Merkle, Hatch & Leslie, Seattle, Wash., for debtors.

William S. Weinstein, Weinstein & Hacker, Seattle, Wash., for trustee.

## MEMORANDUM OPINION

SIDNEY C. VOLINN, Bankruptcy Judge.

The debtors, William and Cecelia White, seek to exclude from the bankruptcy estate, or claim as exempt, an interest of William White in a "Profit Sharing Trust"

("Trust") established by White Metal Fabricating, Inc. ("White Metal") which employed William White as its Chief Executive Officer. This matter has been before the Bankruptcy Court, the District Court, and the Ninth Circuit Court of Appeals. It is now before this court on remand from the District Court. 47 B.R. 410.

The trustee moved for entry of findings of fact and conclusions of law to reflect the District Court orders of February and March, 1985. The debtors object and seek to exclude the Trust interest from the estate under 11 U.S.C. § 541(c)(2) or to amend their exemptions to claim it as exempt under 11 U.S.C. § 522(d)(10)(E) which neither of them has previously scheduled. The trustee objects to amendment and denies that the debtors would be entitled to any Trust funds even if amendment is permitted.

## REVIEW OF FACTS

The debtors filed a personal chapter 11 petition on July 21, 1982. The proceedings were converted to chapter 7 on January 26, 1984. On conversion, William White elected the state exemption scheme as permitted by Section 522(b)(2) and Cecelia White elected the federal exemptions under Section 522(b)(1). William White scheduled a state exemption in the Trust while Cecelia White did not schedule any claim of exemption for the Trust.

The Trust was established in 1967 by White Metal. It was amended in 1976 to comply with the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"). The debtors owned 100 percent of White Metal stock. William White was employed as Chief Executive Officer and the Whites were the sole directors. William White had a vested interest in 95 percent of the funds in the Trust which amounted to about $315,000. All of the Trust funds were contributed by White Metal. William White was the trustee, administrator and named fiduciary of the Trust.

Section 19.06 of the Trust provided that no participant could alienate his interest in the Trust. Section 16.14(1) required diversification of investments to minimize risk. Section 16.14(2) required maintenance of sufficient liquidity for disbursements to plan participants.

There is no dispute that William White was in complete control of the Trust funds and of White Metal. As trustee of the Trust, in August 1981 and March 1982, he invested a total of $304,000 of Trust funds in Jeffron Enterprises ("Jeffron") which is a joint venture of the debtors and White Metal and, consequently, entirely owned and controlled by the debtors.

The Whites individually, White Metal, and Jeffron have all filed bankruptcy petitions. The funds loaned to Jeffron by the Trust have not been repaid. The White Metal estate has filed a disputed claim in the Jeffron estate.

## PRIOR PROCEEDINGS

The trustee's objections to exemption of an interest in the Trust were heard by Bankruptcy Judge Kenneth S. Treadwell. He determined that the Trust was excluded from the estate under Section 541(c)(2) because, as a qualified ERISA plan, it was subject to restraints on alienation enforceable under *federal* nonbankruptcy law. Since the Trust was excluded from the estate the exemption issue was not reached. It was also unnecessary to address the issue of exclusion from the estate as a trust enforceable under *state* nonbankruptcy law.

The trustee appealed Judge Treadwell's decision to the District Court where the matter was heard by Judge Barbara J. Rothstein who determined that the reference to "applicable nonbankruptcy law" in Section 541(c)(2) did not include *federal* nonbankruptcy law. The initial order of the District Court reversed and remanded to the Bankruptcy Court for further proceedings.

Before the matter could be heard on remand, the debtors moved to alter or amend judgment and urged as an alternative theory that the spendthrift trust restraints

were enforceable under *state* nonbankruptcy law, RCW 6.32.250, and therefore the exclusion of Section 541(c)(2) was applicable. In denying this motion, the District Court concluded that "an ERISA plan cannot be a spendthrift trust under state law. ERISA supersedes all state laws with respect to ERISA plans. 29 USC § 1144(a). Therefore, RCW 6.32.250 does not apply in this case."

The debtors appealed to the Ninth Circuit Court of Appeals which dismissed without prejudice for lack of a final, appealable, order. Because Judge Treadwell has since retired the matter has been assigned to this Court.

### ISSUES

1. Whether the Trust can be excluded from the estate pursuant to Section 541(c)(2).

2. Whether the debtors should be permitted to amend their exemption schedules to include the beneficial interest in the Trust.

3. Whether the Trust can be exempted under Section 522(d)(10)(E).

4. Whether the Court should sign the findings of fact and conclusions of law proposed by the trustee.

### SECTION 541(c)(2)

#### A.

The debtors originally argued that the phrase "applicable nonbankruptcy law" includes federal nonbankruptcy laws such as ERISA which requires qualified plans to contain restraints on alienation. The ruling of the bankruptcy court agreeing with this contention was reversed by the District Court which held that this section does not exclude from the estate trusts with restrictions enforceable under *federal* nonbankruptcy law. *In re White*, 47 B.R. 410 (W.D. WA 1985). Since that opinion was filed, the Ninth Circuit has reached the same conclusion. *In re Daniel*, 771 F.2d 1352 (9th Circuit 1985).

In response to the motion to alter or amend, the District Court held that Section 541(c)(2) does not exempt ERISA plans even if they would be enforceable under *state* nonbankruptcy law. *In re White, supra* at 413. That holding was based upon 29 U.S.C. § 1144(a) which provides that ERISA supersedes state law. Other courts have reached a contrary conclusion. See *e.g. In re Crenshaw*, 51 B.R. 554 (D.C. Ala.1985).

 Once a matter has been heard on appeal and is remanded, the decision of the appellate court, in this case the District Court, constitutes the "law of the case" and the remand court is bound to proceed in accordance with the terms of the remand order. *In re Sanford Fork and Tool*, 160 U.S. 247, 255–56, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895); *Hermann v. Brownell*, 274 F.2d 842 (9th Cir.1960); 6A Moore's Federal Practice ¶ 59.16. Thus, the "law of the case" doctrine would preclude a determination at this level to apply state spendthrift trust law to the terms of the White Metal ERISA plan.

The issue of whether ERISA-qualified plans meeting *state* spendthrift trust requirements may be excluded from the bankruptcy estate under Section 541(c)(2) is inherent in this case. However, it was not dealt with by the bankruptcy court. On appeal, for the first time, and then in the course of a post-hearing motion, it was brought to the attention of the District Court by way of a motion to alter or amend the earlier decision which had considered and decided the issue of exclusion only under *federal* nonbankruptcy law.[1] Because this issue of exclusion under *state* law has been directly raised and argued on remand, and the importance of the question, it would be appropriate, under the circumstances, to consider and rule on it.

Section 541(c)(2) does not exclude from the estate property subject to restrictions on alienation enforceable under *federal*

---

**1.** The appeal of the District Court's dispositive order to the Ninth Circuit Court of Appeals, was "dismissed for lack of a final appealable order

... without prejudice to an appeal from a final appealable order."

nonbankruptcy law. *In re Daniel, supra, In re Lichstrahl,* 750 F.2d 1488 (11th Cir. 1985), *Matter of Goff,* 706 F.2d 574 (5th Cir.1983). However, analysis under *state* spendthrift trust law is appropriate even for a qualified ERISA plan. The Ninth Circuit has endorsed the view of the Eleventh Circuit that "... ERISA-qualifying pension plans containing anti-alienation provisions are excluded pursuant to Section 541(c)(2) only if they are enforceable under state law as spendthrift trusts." *In re Daniel, supra* at 1360 quoting *In re Lichstrahl, supra* at 1490. Accord, *Matter of Goff, supra.*

While ERISA provisions override state law, they do not "alter, amend, modify, invalidate, impair, or supercede any law of the United States ..." 29 U.S.C. § 1144(a) and 1144(d). However, the question arises as to whether it is appropriate to examine an ERISA plan's restrictions on alienation to determine if they would be enforceable under state law by virtue of 11 U.S.C. § 541(c)(2).

If Section 541(c)(2) could never exclude an ERISA trust, such trusts would always be considered as exemptions under Section 522(d)(10)(E) which permits exemption only to the extent necessary for support. Exemption might be allowed in whole, in part, or not at all. Consequently, a non-ERISA state spendthrift trust would be excluded from the estate whereas as an ERISA-qualified trust, albeit containing equivalent spendthrift trust provisions, would be subject to nullification. The analysis of the trust under state spendthrift trust law for purposes of exclusion from the estate under Section 541(c)(2) should be undertaken whether or not the trust is ERISA-qualified.[2] Considering the lack of specific statutory language or history, and consistent with the policy directed toward financial rehabilitation for the debtor and preservation of exemptions, the simple event of bankruptcy should not invalidate the spendthrift provisions of a retirement plan only because the plan is ERISA-qualified. The happenstance of bankruptcy should not confine the beneficiary of such a trust to Section 522(d)(10)(E) income related exemptions when non-ERISA spendthrift trusts are entirely excluded from the estate. Therefore, discussion of the applicable spendthrift trust law in Washington State is appropriate.

### B.

Washington State recognizes both express and statutory spendthrift trusts. *See generally: Spendthrift Trusts in Washington,* 58 Wash.L.Rev. 831 (1983). Express spendthrift trusts are recognized by case law. *Milner v. Outcalt,* 36 Wash.2d 720, 219 P.2d 982 (1950). Statutory spendthrift trusts are created pursuant to R.C.W. § 6.32.250 which provides:

6.32.250 Property exempt from seizure. This chapter does not authorize the seizure of, or other interference with, any property which is expressly exempt by law from levy and sale by virtue of an execution, or any money, thing in action or other property held in trust for a judgment debtor where the trust has been created by, or the fund so held in trust has proceeded from a person other than the judgment debtor ...

Thus, there are two basic requirements for a valid spendthrift trust in Washington State. (1) The trust must be funded by, or proceed from, a settlor other than the beneficiary. The settlor cannot create a spendthrift trust for his own benefit and thereby place his property beyond the reach of his creditors. RCW 6.32.250. See also 2 A. Scott, The Law of Trusts § 156 (3d ed. 1967); Restatement (Second) of Trusts § 156 (1959). (2) The beneficiary must not be able to deprive himself of the right to future income under the trust. *Erickson v. Bank of California,* 97 Wash.2d 246, 250, 643 P.2d 670 (1982) citing *Milner v. Outcalt, supra,* 36 Wash.2d at 722, 219 P.2d 982.

---

**2.** *See* Rombauer, 3 Creditor-Debtor Law Newsletter, # 2 (1985) (Published by the Washington State Bar Assn. Creditor-Debtor Law Section.)

The facts here indicate that the debtors own 100 percent of the White Metal stock and are its sole directors. William White was employed by the debtor as its Chief Executive Officer. The debtors, through their control of the corporation, established the Trust and caused the corporation to fund it. William White was trustee, administrator and fiduciary of the Trust. He was also its primary beneficiary, being entitled to 95 percent of the vested funds therein.

In conjunction with the foregoing, it should be noted that there is no contention that White Metal was not a legitimate corporation nor that the debtors ever ignored the corporate formalities. The trust was established with due regard for the corporate structure. The funds had accumulated since 1967 and there is no evidence that they were placed there with any intent to frustrate creditors.

The issue thus arises as to whether Washington State spendthrift trust law would enforce restraints on alienation where the settlor is a corporation solely owned and totally controlled by the beneficiary of the trust who has sole discretion and control over management of the trust.

■ The mere fact that William White is an employee of the corporation which funds the Trust does not make him the settlor. Pension funds are not self-settled merely because they are funded in part by employee contributions or by funds contributed by the employer as compensation for employment. See *e.g. Fordyce v. Fordyce*, 80 Misc.2d 909, 365 N.Y.S.2d 323, 328 (1974). However, such cases involve plans funded as a necessary incident of employment and they are voluntary only in the sense that the employee voluntarily remains an employee. They do not involve wholly-owned corporations which place funds beyond the reach of the owner's own creditors. *Id.*

In this case the Whites have placed funds beyond the reach of their creditors, albeit the corporate entity intervenes. It may be that creditors of the Whites individually could not reach funds left in the corporation's own accounts (absent piercing the corporate veil). It may be that William White paid himself a reasonable salary as an employee and the accumulating funds were not placed in the trust unreasonably. Nonetheless, the funds were placed beyond the reach not only of the creditors of Mr. White who may have guaranteed corporate debts, but also beyond reach of his corporate creditors. Further, the Trust does not provide for any external agent or mechanism which could inhibit or limit the beneficiary's self-serving rationalization for application of the funds to his own personal needs. To permit such a trust to be a spendthrift trust would be subject to easy and obvious abuse.

The debtor controlled the Trust as trustee. He was required to invest the funds and chose to invest substantially the entire amount in another corporation wholly-owned by himself. He did this in apparent contravention of the explicit provisions of the documents creating the Trust which required diversification of investments. Thus, there was not only the possibility of unfettered control by the debtor but actual self-dealing in his investment of the funds. His investment of most of the funds in his wholly-owned venture was in effect to treat the Trust as his personal savings.

This is not to say that whenever a beneficiary of a trust is a significant shareholder in a corporate employer there is no possibility of establishing a valid spendthrift trust. However, the mere interposition of a corporate entity between the beneficiary and the funds, where the corporation is owned and controlled by the beneficiary, should not serve to satisfy the requirement that a spendthrift trust must be funded by someone other than the beneficiary.

If the foregoing analysis of the first requirement for a valid spendthrift trust, non-funding by the beneficiary, is conclusive, analysis of the second requirement is: The beneficiary must not have such control over the funds so as to render them more in the nature of present savings than future income. *Milner v. Outcalt, supra*.

■ If the debtor's access to the funds is easily accomplished, exclusion from the bankruptcy estate would create a temptation or opportunity to shelter assets in a trust and withdraw them for personal use upon issuance of the bankruptcy discharge. *Matter of Goff,* 706 F.2d 574, 588 (5th Cir.1983). Limited control may be tolerated if its exercise would create such hardship for the debtor as to discourage its exercise except in dire circumstances. See *Matter of Baviello,* 12 B.R. 412, 415 (Bankr.E.D.N.Y.1981); *In re Parker,* 473 F.Supp. 746 (W.D.N.Y.1979); *In re Wright,* 39 B.R. 623 (D.S.C.1983). The funds in a trust should be deemed self-settled where they are "voluntarily paid over by a depositor for his own ultimate benefit, revocable at will...." *Sheehan v. Sheehan,* 90 Misc.2d 673, 395 N.Y.S.2d 596, 597 (1977).

■ In this case the debtor made all of the decisions regarding the Trust funds. He could have withdrawn the funds at any time by merely terminating his employment, removing the funds, and rehiring himself. Although the corporate entity intervenes, the debtor retained ultimate control over the funds. In reality it was the debtor himself who placed the funds in trust and never parted with control thereof. The fact that he acted without intent to defraud his creditors is not relevant. 2 A. Scott on Trusts § 156 (3d ed. 1957).

The unrestricted manner in which the debtor handled the funds in his role as trustee demonstrates the potential for abuse of a trust created as a plan for retirement purposes. William White caused nearly the entire contents of the Trust to be invested in a joint-venture between the debtors and their wholly-owned corporation, White Metal. As trustee he owed a fiduciary duty to manage the trust in accordance with its terms which required diversification of investments to minimize risk. He was required to maintain liquidity. Instead, he invested the funds in his new business, Jeffron Enterprises. He treated the Trust as a personal savings account rather than handling it in strict compliance with its terms as a fiduciary.

In conclusion, the single factor of corporate entity is not determinative. Overall, the Trust is deemed to be self-settled and therefore unenforceable under state spendthrift trust law. The Trust is property of the estate and cannot be excluded under Section 541(c)(2).

## AMENDMENT OF EXEMPTIONS

The debtors seek to amend their exemptions in order to claim the beneficial interest in the Trust under Section 522(d)(10)(E). William White seeks to switch from the state exemptions to the federal exemptions while Cecelia seeks to include Section 522(d)(10)(E) in her already elected federal exemptions.

The trustee objects to amendment on the grounds that the debtors have already received the benefit of their originally chosen exemptions pursuant to an agreement by the trustee to drop his objections to all claimed exemptions except the exemption of the beneficial interest in the Trust. The debtors have already received their $20,000 homestead and other exemptions. The trustee urges that there must be finality concerning the exemptions and that the debtors have waived any right to amend by accepting the benefit of their original choices. He also argues laches and estoppel.

■ Amendments are allowed at any time absent a showing of bad faith by the debtor or prejudice to creditors. *Matter of Doan,* 672 F.2d 831, 833 (11th Cir.1982); *In re Andermahr,* 30 B.R. 532 (9th Cir.Bankr. App.1983). The debtor may amend without court permission at any time during the pendency of the case. Bankruptcy Rule 1009; *In re Andermahr, id.* at 533).

■ It does not appear that there was any bad faith by the debtors. They disclosed the existence of the Trust in their original schedules and attempted to exclude it from the estate by operation of Section 541(c)(2). William White originally claimed it as exempt under the state exemptions. There was never any doubt that the debtors were intent upon retaining the

Trust funds. They carried the matter to the Ninth Circuit after the trustee succeeded in overturning Judge Treadwell's exclusion of the funds from the estate. The issue has persisted because all of the issues surrounding Section 541 and Section 522 were never resolved at a single hearing. Nonetheless, it appears obvious throughout that the debtors were seeking the funds and, if they were frustrated at any level, would seek an alternative means of retaining the funds since the very funds involved are still in a state of uncertainty between the Jeffron and White Metal estates. No one can claim to have been surprised or to have reasonably relied upon the status of the Trust.

The burden of proof is on the trustee to prove that an exemption is not properly taken. Bankruptcy Rule 4003(c). The policy of the Code is to give a liberal construction of exemptions in favor of those who are benefited by them. *In re McQueen*, 21 B.R. 736 (Bankr.D.Vt.1982). Therefore, the court must rule that the debtors may amend their exemptions to schedule the Trust funds under Section 522(d)(10)(E).

### SECTION 522(d)(10)(E)

The right to amend schedules is not the same as a right to the exemption. *In re McQueen, id.; Matter of Gershenbaum*, 598 F.2d 779, 783 (3d Cir.1979). The trustee argues that even though it is scheduled, the Trust does not qualify under Section 522(d)(10)(E), which provides in part:

(d) The following property may be exempted under subsection (b)(1) of this section:

(10) The debtor's right to receive—

. . . . .

(E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

For the Trust to qualify under this section it must first be a "stock bonus, pension, profit-sharing, annuity or similar plan or contract" for the enumerated reasons. If it is, it may be exempted to the extent it is reasonably necessary for the support of the debtor or a dependent of the debtor.

This section is meant to protect "benefits akin to future earnings of the debtor." House Report No. 95–595, 95th Congress, 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318. The intent is "to insure that such benefits are available for retirement purposes or in the event of disability or termination of employment." *In re Sheridan*, 38 B.R. 52 (Bankr.D.Vt.1983). Thus, such payments may be exempted where they are "akin to future earnings of the debtor." *In re Miller*, 33 B.R. 549 (Bankr.D.Minn.1983).

In the instant case the debtor had effective control of the Trust funds. As indicated, he could withdraw them at any time by merely terminating his corporate employment and removing the funds. He would suffer no penalty because he could simply rehire himself. His investment of substantially the entire Trust in his wholly-owned venture contravened his fiduciary duty to diversify investments and maintain liquidity. As trustee he treated the funds as personal savings. It is clear that the Trust was not "akin to future earnings" as contemplated by the Code. Therefore, it is not the kind of plan or contract included in the Section 522(d)(10)(E) exemption and the debtors may not claim it as exempt.

### CONCLUSION

The Trust may not be excluded from the estate under the provisions of Section 541(c)(2). While the court finds that the debtors may amend their exemptions to schedule the Trust under Section 522(d)(10)(E), it would avail them nothing because the Trust is not a contract or plan in the nature of future earnings as required by that section.

The Court has reviewed the trustee's proposed Findings of Fact and Conclusions of Law and Order on Remand from Appeal as well as the debtor's objections thereto. Since this memorandum opinion embodies

**396**

the court's findings and conclusions pursuant to Bankruptcy Rule 7052, it is not necessary to enter them separately.

IT IS SO ORDERED.