**In re Mary R. CATES, Debtor.**

**Alexander T. BISHOP,
Trustee, Plaintiff,**

**v.**

**Mary R. CATES and Pacwest Bancorp,
an Oregon corporation, Defendants.**

**Bankruptcy No. 386–03070–P7.
Adv. No. 86–0442.**

United States Bankruptcy Court,
D. Oregon.

May 20, 1987.

Alexander T. Bishop, Portland, Or., for plaintiff.

J. Stephen Werts, Portland, Or., for defendants.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

This is an adversary proceeding initiated by the Trustee, Alexander T. Bishop, to require the turnover of certain funds in the possession of the trustees of the Pacwest Bancorp Savings Plan ("Pacwest"). The Debtor, Mary T. Cates, a Pacwest employee, did not make an appearance in this action. Pacwest resists the turnover action with two defenses. First, it asserts that the funds in the Debtor's Plan account are not property of the estate under § 541(c)(2) of the Bankruptcy Code.[1] Second, it argues that even if the funds are property of the estate, they are subject to exemption by the Debtor under ORS 23.170.

---

1. All statutory citations are to the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq. (West.Supp.1986), unless otherwise designated. This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(E).

## FACTS

The Pacwest Bancorp Savings Plan ("the Plan"), is a retirement plan administered by the Retirement Plan Committee, and is qualified pursuant to The Employee Retirement Income Security Act of 1974, (E.R.I.S.A.), 29 U.S.C. §§ 1001 *et seq.,* and within the meaning of the Internal Revenue Code of 1954, 26 U.S.C. § 401(a). The Plan, as is pertinent to this Debtor, is funded by voluntary employee salary reductions ("the salary reduction account") and matching employer contributions. While the employee can designate up to 11% of her compensation to be directed to her account, employer contributions will not exceed 6% of that employee's compensation and may be significantly smaller. The employer contribution is made quarterly and is linked to the profitability of the corporation.

The Plan restricts withdrawals. An employee may withdraw all or some of the funds in her salary reduction account, excluding income, only if she demonstrates to the satisfaction of the Retirement Plan Committee that the funds will be used for an approved purpose. The approved purposes are limited to: purchase or improvement of the employee's primary residence, payment of extraordinary medical expenses, and payment of education expenses of the employee's children. Once a withdrawal is made, no further withdrawals are allowed in the following twelve months. Funds may not be withdrawn from the employer account until a member ceases to be an employee, whether by death, disability, retirement, or termination of employment.

The Plan contains a clause limiting the alienability of Plan benefits. Paragraph 10.1 states:

> The Trustee will make benefit payments only to Members, beneficiaries or spouses entitled to benefits under the plan or persons designated under section 5.2. No right or claim to benefit payments from the Fund or assets of the Fund will be assignable or alienable, nor will such rights or claims be taken by attachment, execution, levy, or other legal or equitable proceedings. However, the Administrative Committee will recognize qualified domestic relations orders to the extent required by Section 10.3.

Ms. Cates contributed approximately $1,200 to her employee salary reduction account. Pacwest matched this sum with contributions of approximately $600. The account had accrued approximately $200 in interest as of the date of the filing of the Chapter 7 petition. Ms. Cates has not withdrawn any sums from her account.

## ISSUES

I. Does § 541(c)(2) exclude from the property of the estate all or any portion of the Debtor's interest in the Plan?

II. Does a party other than the Debtor have standing to argue the Debtor's right to exempt particular property?

## DISCUSSION

I. *Section 541(c)(2) excludes from the estate that portion of the Plan which is funded by matching employer contributions.*

In *In re West,* 64 B.R. 738 (Bankr.D.Or. 1986), this Court held that a debtor's interest in an E.R.I.S.A. qualified plan is immune from the trustee's reach only if that interest is subject to a spendthrift clause that is enforceable under state law.

Spendthrift trusts have been recognized as valid and enforceable under Oregon law for almost eighty years. *See Mattison v. Mattison,* 53 Or. 254, 100 P. 4 (1909). But that recognition is not without restrictions; when the Oregon courts determine that the enforcement of spendthrift provisions is contrary to public policy, they decline to enforce the spendthrift provisions. *See Shelly v. Shelly,* 223 Or. 328, 354 P.2d 282 (1960). The Oregon courts also follow the general rule that if a person creates a trust for his own benefit and inserts a "spendthrift" clause, restraining alienation or assignment, the trust is void as far as his creditors are concerned. *Johnson v. Commercial Bank,* 284 Or. 675, 588 P.2d 1096

(1978).[2] The prohibition on self-settled spendthrift trusts is based on the reasoning that it is inequitable for a person to enjoy the benefit of his assets, while at the same time putting those assets outside the reach of his creditors. Bogert, *The Law of Trusts and Trustees,* § 223, p. 477 (rev. 2d ed. 1984).

In the case at bar, a portion of the funds in which the Debtor has an interest were supplied by the Debtor through voluntary salary deferrals. In this respect the fund is self-settled [3] and the spendthrift clause is not enforceable.

PacWest cites *In re White,* 61 B.R. 388 (Bankr.W.D.Wash.1986), for the proposition that pension plans are not to be considered self-settled solely because they are funded in part by employee contributions. *White* involved the application of § 541(c)(2) to an E.R.I.S.A. plan established by a privately-held corporation in which the Debtor was the chief executive officer and he and his wife were the sole shareholders. The Debtor, who was also the sole trustee of the plan, had complete control over the pension funds. The plan in *White* was totally funded by employer contributions. In discussing the validity of the spendthrift provisions of the Plan, Judge Volinn made the following statement relied upon by PacWest:

> Pensions funds are not self-settled merely because they are funded in part by employee contributions or by funds contributed by the employer as compensation for employment. 61 B.R. at 393.

However, it is clear from the context of the opinion that Judge Volinn was referring only to plans that are, "funded as a necessary incident of employment and [the contributions] are voluntary only in the sense that the employee voluntarily remains an employee." 61 B.R. at 393. Thus, it appears the statement relied upon by PacWest refers to plans in which the employee has no discretion regarding participation in the plan or the amount of the contribution to the plan from his or her wages. Such plans are quite different from the one at bar.

In construing the § 541(c)(2) exclusion, it is important to remember that the exclusion was intended to be a narrow exception to the very broad and encompassing definition of "property of the estate" that is defined in § 541(a). Based on the section's legislative history, the courts have limited its application to traditional state spendthrift trusts. *In re Daniel,* 771 F.2d 1352, 1360 (9th Cir.1985). In determining the extent of the exclusion, courts must be guided solely by the rules of spendthrift trusts as created by state law. It is not appropriate for the bankruptcy courts to add to, or create new exceptions to state spendthrift trust rules when applying § 541(c)(2). One of the most universal rules of spendthrift trusts is that self-settled spendthrift trusts are not enforceable as to creditors of the settlor. That rule must be applied in this instance to invalidate the spendthrift clause insofar as it applies to funds in the Plan that were supplied by the Debtor.

A question remains, however, as to whether the invalidity of the clause as it applies to a part of the funds nullifies the provision as to the Debtor's entire interest in the Plan, including her interest in the funds supplied by the employer. The cases are split on this issue. In *In re DiPiazza,* 29 B.R. 916 (Bankr.N.D.Ind.1983), the court held that because the debtor had access to the funds he contributed to the plan the entire plan was property of the estate, even though the debtor did not have access to the funds supplied by the employer. In *In re Berndt,* 34 B.R. 515, 520–21 (Bankr.N.D. Ind.1983), the court found that even though part of the funds were not subject to a valid spendthrift clause, the court, through its equitable powers, could sever the portions of the plan and determine the validity

---

**2.** *See* discussion of *Johnson v. Commercial Bank* in *In re West,* 64 B.R. at 743 n. 11.

**3.** The fact that the trust mechanism was established by the employer does not make the employer the settlor of the trust. One who furnishes the consideration (res) necessary for the creation of the trust is the settlor of the trust. Bogert, *supra.* at § 41 p. 428–429.

of the spendthrift clause as applied to each portion.

 As far as this Court can determine, there is no Oregon law on the severability of trust provisions. The Trustee, in his brief, suggests that it may be proper to sever the provisions of the Plan as to the funds contributed by the employee and those contributed by the employer, but no authority is cited for this proposition. While this Court has failed to find any authority exactly on point, it has found a statement in the treatise *Spendthrift Trusts,* written by Erwin N. Griswold, (Matthew Bender & Co., 2nd Ed.1947), which supports the argument that the provisions of the trust can be severed to determine the validity of the spendthrift clause as it relates to each provision. In § 282.1 p. 345 of that treatise the author states: "[w]here a person creates a trust with spendthrift provisions, with himself and others as the beneficiaries, the invalidity of the restraint extends only to his own interest. The spendthrift clause is valid as to the non-settlor beneficiaries." Thus, I find that for purposes of analysis under § 541, the portion of the Plan funded by the debtor can be severed from that portion funded by the employer. In this case, the portion funded by the Debtor is property of the estate, while the portion funded by the employer is subject to a valid spendthrift clause and is beyond the reach of the Trustee pursuant to § 541(c)(2).

II. *A party other than the Debtor does not have standing to assert the Debtor's exemptions.*

 PacWest argues that even if the funds are property of the estate the Trustee cannot attain turnover, because the funds are exempt under the state pension exemption, ORS 23.170. The Court will not consider this argument because the assertion of an exemption under bankruptcy law is personal to the debtor. It may not be asserted by others on behalf of the debtor. *Matter of Osburn,* 56 B.R. 867 (Bankr.S.D. Ohio 1986). The Debtor is the only party who can raise the exemption, and the Debtor has chosen not to participate in this action.[4]

### CONCLUSION

Pacwest is ordered to turnover to the Trustee the funds in the Debtor's salary reduction account as these funds are property of the estate and not presently subject to a claim of exemption.

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law, and pursuant to Bankruptcy Rule 7052, they will not be separately stated.

---

4. The Court is aware that the Debtor, after the Order of Default was entered, amended her bankruptcy schedules to claim the funds in the Plan exempt under ORS 23.170. The validity of this claim will have to be determined in another proceeding.