# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 11-6018
_____

In re:  Mary Joan Lumbar, formerly          *
   known as Mary Joan Welsh, formerly *
   known as Mary Joan LaFond               *
                                      *

      Debtor                                    *

Patty J. Sullivan, Trustee                  *    Appeal from the United States
                                        *    Bankruptcy Court for the
     Plaintiff - Appellant               *    District of Minnesota

          v.                                 *

Raymond J. Welsh; Joan C. Welsh;            *
   Welsh Living Trust, Raymond J.           *
   Welsh and Joan C. Welsh, Trustees        *

     Defendants - Appellees              *

_____

Submitted: September 13, 2011
Filed: October 12, 2011
_____

Before FEDERMAN, VENTERS and SALADINO, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

     The Chapter 7 Trustee in the bankruptcy case of Mary Joan Lumbar appeals from the Bankruptcy Court's judgment in favor of the Debtor's parents on a

fraudulent transfer action, holding that the Debtor could not fraudulently transfer property that would have been exempt.  For the reasons that follow, the judgment is reversed and remanded for further findings.

## FACTUAL BACKGROUND

The facts are essentially undisputed.  Shortly after they were married in October 1994, Debtor Mary Lumbar and her then-husband Daniel Lumbar entered a contract for deed to purchase a house from Mary's parents, Raymond and Joan Welsh.  The total purchase price under the contract for deed was $150,000, to be paid at 7% interest, with monthly payments of $750 and balloon payments due April 1, 1996, and October 1, 2001, at which time the contract should have been paid off.  The contract for deed was recorded in the Ramsey County, Minnesota, land records on November 7, 1994.  In February 2000, the Welshes conveyed their seller's interest in the contract for deed to "Raymond J. Welsh and Joan C. Welsh, Trustees, or their successors in trust, under the Welsh Living Trust" (the "Welsh Trust").  This deed was recorded on April 10, 2000.

Although the Lumbars made the regular monthly payments, they failed to make either of the two balloon payments.  However, despite those defaults, the Welshes took no action under the contract for deed.  Instead, they apparently began to accept monthly payments of $1,000 starting in January 2002.

In February 2006, Daniel Lumbar filed for divorce.

On May 1, 2006, the Welshes served a notice of cancellation of the contract for deed on the Lumbars.[1]  In the notice, the Welshes asserted that the amount due at the

---

[1]The Welshes expend considerable effort in their brief discussing their asserted cancellation of the contract for deed and its effect on this litigation, but no findings were made by the bankruptcy court with respect to that issue, so we do not

2

time was $188,426.15.[2] The notice of cancellation provided for a sixty-day period for the Lumbars to pay that amount in full.

In mid-May 2006, Daniel's attorney requested that Mary join in an action to stay the cancellation of the contract. Mary's attorney declined to do so.

On June 8, 2006, Daniel filed a motion for temporary injunction in the Ramsey County court against Mary and the Welshes. Following a hearing, the state court issued a temporary injunction on June 27, 2006, restraining the cancellation of the contract for deed. It ordered the Welshes and the Welsh Trust to escrow the deeds, pending a closing on a loan to Daniel for him to purchase the property in his own name. It also required Mary's cooperation in the loan closing, and ordered that she execute all documents necessary to get Daniel's loan closed. The injunction was to expire July 31, 2006, or upon confirmation that Daniel did not qualify for a loan sufficient to cure and pay the contract off.

In accordance with the state court's order, the Welshes escrowed the deeds. Daniel was approved for a loan sufficient to cure and pay the contract off. He arranged for a July 7, 2006 closing, but Mary did not attend, nor did she execute the necessary documents.

On July 17, 2006, Daniel filed a complaint in the Ramsey County Court against Mary and the Welshes for unjust enrichment, civil conspiracy, fraud, misrepresentation, and other torts. He sought a continuing suspension of the cancellation of the contract and other injunctive relief to protect his interests in the property.

---

address it.

[2] According to the Trustee, the tax assessed value of the property was $562,300 as of January 2006.

Meanwhile, the Welshes appealed the temporary injunction. They also filed a motion in the Ramsey County court to have the temporary injunction dissolved or stayed. Daniel then filed a motion to have Mary held in contempt for failure to comply with the closing requirements. On July 25, the court declined to dissolve the temporary injunction, but stayed it pending the Minnesota Court of Appeals' decision on the Welshes' appeal. The stay was conditioned on Mary's execution of the necessary documents, which were to be held in escrow pending that outcome. The contempt motion was denied, without prejudice to renewal if Mary failed to execute the documents.

On May 29, 2007, the Minnesota Court of Appeals reversed the grant of the temporary injunction on procedural grounds, namely, that Minnesota law requires the filing of a complaint before an injunction can be issued. The case was remanded to the trial court.

On October 8, 2007, the state court denied the Welshes' motion to dismiss the complaint, holding that Daniel had pled facts sufficient to make out claims against the defendants. The court stayed the cancellation of the contract, as well as Daniel's ability to redeem the property.

On November 7, 2007, the Welshes and the Lumbars executed a settlement and release agreement, pursuant to which the Ramsey County court litigation was to be dismissed. Under the relevant terms of the settlement:

a.  Raymond Welsh was to pay Daniel Lumbar a total of $85,000.00;
b.  Daniel and Mary were to execute a quit claim deed to the property in favor of the Welshes; and
c.  Daniel and Mary agreed, with regard to the issues arising out of their dissolution action, that all marital property, including their equitable interest in the real estate, be solely owned by Mary.

4

On November 16, 2007, Mary executed a quit claim deed of her interest in the property in favor of the Welshes. The deed recites that the "total consideration for this transfer [was] $500 or less."

The parties filed a stipulation of dismissal in the Ramsey County court on January 7, 2008. That same day, the state court dismissed the case with prejudice.

Mary filed a Chapter 7 bankruptcy case on December 24, 2008. The quit claim deed from Mary to her parents had not been filed in the Ramsey County land records by the date of Mary's bankruptcy filing. Mary did not list the property on her schedules nor did she claim an exemption. The Chapter 7 Trustee filed an adversary proceeding against the Welshes and the Welsh Trust (hereafter, collectively referred to as the "Welshes") on June 8, 2009, seeking, as relevant here: avoidance of the Debtor's transfer of her Vendee's Interest as a constructive fraudulent transfer under § 548(a)(1)(B) (Count II); avoidance of the Debtor's transfer of her Vendee's Interest as an intentional fraudulent transfer under §548(a)(1)(A) (Count III); avoidance of the Debtor's transfer of her Vendee's Interest under Minn. Stat. §§ 513.44 and 513.45 and 11 U.S.C. § 544(a) (Count IV); and avoidance of the Debtor's unperfected transfer of her Vendee's Interest under 11 U.S.C. § 544(a) and Minn. Stat. § 507.235(1) (Count V). As mentioned above, the Trustee asserted that the property could have been worth well over $500,000, based on tax assessment values. If the Trustee were to prevail under any of these counts, 11 U.S.C. § 550 provides that the Trustee may then recover the transferred property, or the value thereof, from the transferees.

The Trustee moved for summary judgment, and the Welshes responded. Although the Welshes did not also ask for summary judgment, the Court granted summary judgment in their favor on Counts II through V. The parties subsequently dismissed Counts I and VI, and final judgment was entered. The Trustee appeals only as to Count II for constructive fraud under § 548(a)(1)(B) of the Bankruptcy Code.

## STANDARD OF REVIEW

We review the Bankruptcy Court's factual findings for clear error and its conclusions of law *de novo*.[3]

## DISCUSSION

Pointing out that a debtor's property interests are defined by state law,[4] the Bankruptcy Court held that, under Minnesota law, exempt homestead property is not capable of being fraudulently transferred and, therefore, transfers of such property cannot be avoided under Minnesota's state-law statutory avoidance remedies.[5] Based on that interpretation of Minnesota law, the Court ruled in favor of the Welshes on Count IV of the Complaint, which, as mentioned above, was based on 11 U.S.C. § 544

---

[3] *Floret, L.L.C. v. Sendecky* (*In re Sendecky*), 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002).

[4] *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 451, 127 S.Ct. 1199, 1205, 167 L.Ed.2d 178 (2007) ("As we stated in *Butner*, property interests are created and defined by state law, and unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (*quoting Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); (internal brackets and quotation marks omitted)).

[5] *See Sisco v. Paulson*, 45 N.W.2d 385, 387 (Minn. 1950) ("Exempt property is not susceptible of fraudulent alienation, and creditors ordinarily have no right to complain of the disposition made of it, since they cannot be prejudiced thereby or claim that it is a fraud upon them. So far as exempt property is concerned, there are no creditors within the meaning of the [Minnesota fraudulent transfer] statute.").

and Minnesota's fraudulent transfer law.  As stated, the Trustee does not appeal that part of the Court's decision and, therefore, we do not review it here.  However, the Bankruptcy Court went on to hold that that state law premise – that exempt property is not capable of being fraudulently transferred – extends to the fraudulent transfer provisions in 11 U.S.C. § 548(a)(1).  The Trustee asserts this was error.  We agree.

As the Bankruptcy Court acknowledged, the Bankruptcy Code vests trustees in bankruptcy with two powers to avoid prepetition fraudulent transfers of property by a debtor.  The first, § 544(b), gives the bankruptcy trustee whatever avoiding powers an unsecured creditor with an allowable claim might have under applicable state or federal law.[6]  The second, § 548(a)(1), provides for the trustee to avoid transfers within two years prior to the bankruptcy if certain requirements are met.  As relevant here, § 548(a)(1)(B), commonly referred to as the Bankruptcy Code's constructive fraud provision, reads in part as follows:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> * * *
>
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > (ii)     (I) was insolvent on the date that such transfer was made . . . , or became insolvent as a result of such transfer . . . .[7]

In order to prevail under § 548(a)(1)(B) of the Bankruptcy Code, the Trustee must prove, by a preponderance of the evidence, the following elements:

---

[6]  *In re Popkin & Stern*, 223 F.3d 764, 769 n. 11 (8th Cir. 2000).

[7]  11 U.S.C. § 548(a)(1)(B).

(1) an interest of the debtor in property; (2) was voluntarily or involuntarily transferred; (3) within [two years] of filing bankruptcy; (4) where the debtor received less than reasonably equivalent value; and (5) debtor was insolvent at the time of the transfer or became insolvent as a result thereof.[8]

Because the Bankruptcy Court essentially concluded that exempt property in Minnesota cannot be fraudulently transferred *per se*, the language of § 548 notwithstanding, the Bankruptcy Court did not discuss the elements of § 548. While we recognize that property interests are determined by state law and, therefore, the nature of the Debtor's interest in the property at issue here – the first element of § 548(a)(1)(B) – must be analyzed under Minnesota law, the question of whether the Debtor's transfer of that interest was fraudulent under the other elements § 548 is not. In other words, while state law determines the nature of a debtor's interest in property, it does not determine whether a transfer of that interest is fraudulent under § 548. Indeed, if the Bankruptcy Court is correct that courts are to look to the same state fraudulent transfer law under § 548 as under § 544, then no purpose would be served by § 548. Therefore, the Bankruptcy Court erred by failing to analyze the transfer of the Debtor's property under the elements of § 548.

Here, there can be little dispute that the Debtor had an interest in the property under Minnesota law prior to entering the settlement, even if it was exempt. Further, in view of the fact that the term "transfer" is defined in the Bankruptcy Code very broadly to mean, *inter alia*, "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property,"[9] there is no plausible dispute that, by entering the settlement and

---

[8] *Schnittjer v. Houston* (*In re Houston*), 385 B.R. 268, 272 (Bankr. N.D. Iowa 2008) (citation omitted).

[9] 11 U.S.C. § 101(54)(c).

executing the quitclaim deed in favor of her parents,[10] the Debtor parted with her interest in the property. And, there appears to be no dispute that she did so within two years prior to filing her bankruptcy petition.

The remaining elements, namely, whether the Debtor received less than reasonably equivalent value from her parents and whether she was insolvent at the time of the transfer or became insolvent as a result thereof, are, however, disputed. Consequently, the matter must be remanded to the Bankruptcy Court to make findings on those elements.

We recognize that some bankruptcy courts have applied to federal fraudulent transfers a "no harm, no foul" or "diminution of the estate" rationale, similar to the Bankruptcy Court's interpretation of Minnesota law here.[11] However, we join the Fourth and Ninth Circuits, as well as a number of lower courts, in rejecting that approach because it is inconsistent with the structure and purpose of the Bankruptcy Code.[12] Under the Code (as opposed to its predecessor, the Bankruptcy Act of 1898),

---

[10] There may be some dispute as to when the actual transfer occurred – with the Settlement Agreement or with the execution of the quitclaim deed. Given that the two events were only a week apart, that distinction makes no difference here.

[11] *See, e.g., Lee Supply Corp. v. Agnew* (*In re Agnew*), 818 F.2d 1284, 1289-1290 (7th Cir. 1987) (applying state law principles to require that there be a reduction in assets available to creditors in order to deny a discharge for fraudulent transfer under 11 U.S.C. § 727(a)(2)); *Tavormina v. Robinett* (*In re Robinett*), 47 B.R. 591, 592 (Bankr. S.D. Fla. 1985) (applying Florida law and holding that the transfer of exempt property cannot adversely affect any creditor and, therefore, cannot be a fraudulent transfer under 11 U.S.C. § 548).

[12] *See Tavenner v. Smoot*, 257 F.3d 401, 406 (4th Cir. 2001) (noting that a majority of courts have rejected the "no harm, no foul" approach for avoiding fraudulent transfers), *cert. denied,* 534 U.S. 1116, 122 S.Ct. 926, 151 L.Ed.2d, 890 (2002); *Fox v. Smoker* (*In re Noblit*), 72 F.3d 757, 758 (9th Cir. 1995) (stating that the majority of recent cases has rejected the "diminution of the estate" doctrine)

9

all property, including potentially exempt property, is part of the bankruptcy estate until the debtor claims an exemption in it, and that exemption is approved. For that reason alone, the Fourth Circuit found the "no harm, no foul" approach to be "misguided."[13] And, as the Ninth Circuit has held, that exemption is "personal to the debtor," and therefore may not be claimed by the recipient of the fraudulent transfer.[14] Indeed, § 522(g) of the Code provides that, if a trustee recovers property under § 550, including property which was fraudulently transferred, the debtor may claim an exemption in the recovered property *unless* the transfer by the debtor was a voluntary one.[15] Thus, the Code anticipates that the Trustee may recover fraudulent transfers of

---

(citing *In re Richards*, 92 B.R. 369, 372 (Bankr. N.D. Ind. 1988); *In re Rundlett*, 149 B.R. 353, 358 (Bankr. S.D. N.Y. 1993); *Matter of Wickstrom*, 113 B.R. 339, 351 (Bankr. W.D. Mich. 1990); *In re Cates*, 73 B.R. 874, 877 (Bankr. D. Or. 1987); *Matter of Osburn*, 56 B.R. 867, 874 (Bankr. S.D. Ohio 1986); *Matter of Ross*, 18 B.R. 364, 369 (Bankr. N.D. N.Y.), *aff'd sub nom. Regan v. Ross*, 691 F.2d 81 (2d Cir.1982)).

[13] *Tavenner v. Smoot*, 257 F.3d at 406-07.

[14] *In re Noblit*, 72 F.3d at 758.

[15] Section 522(g) provides:

Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if –

    (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

    (B) the debtor did not conceal such property; or

    (2) the debtor could have avoided such transfer under

property which the debtor could have claimed as exempt had the debtor still owned such property at the time the bankruptcy case was filed. If, instead of retaining such property and claiming it exempt, the debtor voluntarily opted to transfer it prior to filing bankruptcy, the Code prohibits that debtor from then claiming an exemption if the trustee in the subsequent bankruptcy succeeds in avoiding that transfer as fraudulent. Since the Debtor would not be able to claim this property as exempt because she chose to transfer it away, and since the Welshes do not get the benefit of the exemption the Debtor could have claimed had she not transferred it to them, the Bankruptcy Court erred in holding that § 548 does not apply to transfers of property which would have been exempt.

## CONCLUSION

Because we conclude that the Bankruptcy Court erred in applying Minnesota fraudulent transfer law to the Count seeking relief under § 548(a)(1)(B) of the Bankruptcy Code, we reverse and remand for further findings in accordance with this opinion.

---

subsection (f)(1)(B) of this section.

11 U.S.C. § 522(g).