CARRIE V. JONES and another *vs.* AMHERST H. WILDER, impleaded, etc.

August 5, 1881.

**Trial by Court—Modifying Conclusions of Law.**—A court has a right, upon motion, after its findings have been filed, at least any time before judgment has been entered thereon, to change or modify its conclusions of law from the facts found, without ordering a new trial of the action.

**Same—Appeal—Presumption in favor of Findings of Fact.**—On an appeal from a judgment after trial by the court, where no case or bill of exceptions is made, no point can be made against the judgment on the ground that the findings of fact are not responsive to the issues made by the pleadings. The presumption in such a case is that the facts so found were litigated at the trial by consent, and that sufficient competent evidence to sustain the findings was introduced without objection. The only question presented for decision in such a case is whether the facts found sustain the judgment.

**Partnership—Accounts stated between Managing Partner and the Agent of his Copartner.**—The findings in this case considered, and construed as a finding of fact that plaintiffs and defendants, as part-owners

of the steamboats referred to, engaged as partners in the business of using and running said boats, with an agreement that defendant Charles should act for and represent the plaintiffs in such business as their agent; that no fraud or mistake having been shown, and his authority never having been revoked, his acts in the premises are binding upon plaintiffs, and they cannot reopen any settlements or statements of account made and agreed on between Charles and Wilder regarding their interests in such business. But, notwithstanding such agreement that Charles should act for them in the business, plaintiffs have a right to require Wilder to account for and settle with themselves such matters pertaining to their share of the business as he has not already settled and adjusted with their agent.

Appeal by plaintiffs from a judgment of the district court for Ramsey county, where the action was tried by *Brill,* J., without a jury.

*C. K. Davis,* for appellants.

*Harvey Officer* and *Geo. B. Young,* for respondent.

MITCHELL, J.   Appeal by plaintiffs from a judgment in favor of defendant Wilder.   The complaint in this action is in substance as follows:   That the plaintiffs and defendants were part-owners of the steamboats General Meade, Peninah and Fontenelle, the plaintiffs being the equitable owners of two-fifths of each of the two first-named, and of one-fifth of the last-named, boats; that the legal title to the whole was in the defendants jointly, who, however, had, for a valuable consideration, covenanted and agreed with plaintiffs to hold in trust, and did hold in trust, for plaintffs their aforesaid shares or interests in the steamboats named; that, being such joint owners, all parties agreed as partners to engage in the business of transporting freight and passengers with said boats, and to use and operate them in such business, the profits and losses to be shared in by all parties in proportion to their respective shares in the boats; that under this arrangement such business was carried on during the navigation seasons of 1876, 1877 and 1878, after which the defendants sold and disposed of their interests in the said boats; that the business was under the entire management and control of defendants, who kept the books, and received and disbursed all moneys;

that large profits were earned in said business during each of said years; that plaintiffs and defendants had a full accounting and settlement of the business for the year 1876, but that defendants have failed to account to plaintiffs for their share of the profits for the years 1877 and 1878, except the sum of $12,000. They ask for an accounting, etc., concerning the business of those two years.

The answer of defendant Wilder is so voluminous and discursive that it is not entirely clear what was the theory of the pleader. But, as we understand it, he in substance admits that he and Charles purchased an undivided six-tenths and no greater interest in the vessels named, although admitting that the title to the entire property was conveyed to them jointly. He also denies any joint ownership by the plaintiffs with him, either in law or equity, or that he ever contracted with them in relation to their interests in the vessels, as partner, trustee, or otherwise; and while admitting that the vessels were, in fact, used in the transportation business during the years named, denies that they were so used for the joint benefit of defendants and plaintiffs, or that there was any agreement between him and plaintiffs to that effect; that if plaintiffs had any interest in the boats, it was held in trust for them by defendant Charles alone; but if so, that he never had anything to do with it, or consented to it, but the same was the individual transaction of Charles. He also denies the receipt of any moneys by him, during the continuance of the business of operating said boats; denies that plaintiffs and defendants ever had any accounting of the business of 1876; admits that he has failed to account to them for the business of 1877 and 1878; but denies that they were entitled to any share of this business, or that he ever paid them any money whatever on account of the business of any of the three years named, or that any profits were earned either in the years 1877 or 1878. To this answer plaintiffs interposed a reply. Inasmuch as this appeal is taken only from the judgment in favor of defendant Wilder, it is unnecessary to refer to the answer of defendant Charles.

Upon the trial of the action the court made and filed its findings as follows:

"On the 7th day of September, 1876, at St. Louis, defendants purchased, through William J. Kountz, who had control thereof and power to sell, six-tenths (6-10) of a certain steamboat known as the General Meade, with its engines, tackle, apparel and furniture; six-tenths (6-10) of the steamboat known as the Peninah, with its engines, tackle, apparel and furniture; and six-tenths (6-10) of the steamboat known as the Fontenelle, with its engines, tackle, apparel and furniture; and at the same time the plaintiffs, through the agency of said William J. Kountz, became the owners of four-tenths (4-10) of said steamboats General Meade and Peninah, and two-tenths (2-10) of the steamboat Fontenelle, and their said appurtenances.

"At the same time, and as part of the same transaction, it was mutually agreed between plaintiffs, acting through said William J. Kountz, and defendants, that, for the interest of all concerned, the conveyances from the former owners should be made to defendants only, and that defendants should be vested nominally with the entire title to said boats; and accordingly conveyances were then and there made by said owners, by which, in terms, the title to said boats was vested in said defendants,—that is to say, one-half thereof in said Wilder and one-half thereof in said Charles,—but it was understood that plaintiffs in fact retained and owned their interests aforesaid.

"The said boats had been theretofore used in navigating the Mississippi and Missouri rivers and their tributaries, and were of great value; and it was mutually agreed at the time aforesaid that said boats should thereafter be operated by defendants,—the said steamboats General Meade and Peninah for the benefit of said defendants and plaintiffs, and said steamboat Fontenelle for the benefit of said defendants and plaintiffs and one Braithwaite, who was the owner of two-tenths (2-10) thereof, according to their respective interests aforesaid; and that defendants should have control of said boats and should manage said business, and that plaintiffs and their said interests should be represented therein by said Charles; and as a part of said transaction, said Charles executed and delivered to plaintiffs in writing an instrument in the following terms:

v.28—16

" ' St. Louis, September 7, 1876.

" 'I, the undersigned, agree to hold in trust for Carrie V. Kountz* and Katie P. Kountz, two-fifths interest of str. General Meade, two-fifths interest of str. Peninah, one-fifth interest of str. Fontenelle.

" ' John H. Charles.'

"Thereafter, and during the seasons of 1876, 1877 and 1878, defendants operated said boats upon the Missouri river and its tributaries, in the business of carrying freight and passengers. They had the entire management of said boats, and the control of said business, said Charles acting for himself and for said plaintiffs; and said Wilder received and disbursed the money of said business, and kept the accounts; and the books, papers, and vouchers pertaining to said business are in the hands of said Wilder, together with such funds as have not been paid out in conducting said business, or divided among the owners of said boats. Plaintiffs, through William J. Kountz aforesaid, who has been at all times their duly-authorized agent in all matters relating to said business and to said boats, have had access, as they desired, to the said accounts and vouchers, and have examined the same.

"At the close of business for the season of 1876, the defendants had an accounting together, and stated an account of the business of that year, the net profits of which business were the sum of $14,312.06, whereof three-tenths were retained by said Wilder, and the remainder paid over by him to said Charles, who accounted for and paid to said plaintiffs their just proportion thereof. After the close of business for the year 1877, the defendants had a settlement with each other of the business of that year, and stated an account between them of said business; and it was agreed by them that the profits of the business for that year amounted to $30,562.50. Said Wilder drew three-tenths thereof. Prior to said settlement, upon plaintiff's demand, Charles had paid to them, on account of the business of 1877, the sum of $10,000, which had been furnished him by Wilder for that purpose. After said settlement, the further sum

*The maiden name then borne by the plaintiff Carrie V. Jones.—[Rep.

of $2,000 was paid them on account of said year's business, and said Charles drew out for himself three-tenths of said sum agreed upon as aforesaid; and said plaintiffs did not agree to said account stated by defendants, and refuse to be bound thereby, and claim that certain items therein are unjust; and plaintiffs and defendants are not able to agree upon an account of said business.

"There are some matters pertaining to the business for the year 1878 yet unadjusted, by reason of which a final accounting of the business for that year is not practicable. Defendants have had a settlement between themselves of the business of the year 1878, so far as such business has been closed up, and agreed that, so far as could be then ascertained, the profits of such business amounted to $247.28, which settlement plaintiffs have not agreed to and claim is unjust; and plaintiffs and defendants cannot agree upon an account of said business.

"Defendant Charles executed and delivered to said Braithwaite an instrument relating to his two-tenths interest in said boat Fontenelle, similar, except names and amounts, to that hereinbefore set forth, executed to plaintiffs. Save as aforesaid, the allegations of fact contained in the pleadings, and at issue, are not true.

"As a conclusion of law it is determined that the plaintiffs are entitled to two-fifths of the net profits arising from said business of operating said steamboats General Meade and Peninah, and one-fifth of the net profits arising from operating said steamboat Fontenelle, for the years 1877 and 1878. That defendant ought to account to plaintiffs concerning said business, and to pay over to them the shares aforesaid of such profits remaining unpaid, if any there be. Let an accounting be had before the court, or a referee to be appointed; final judgment to be reserved until the amount is adjusted."

Subsequently, upon motion of defendant Wilder, the court, upon the facts thus found, ordered judgment in his favor. From this judgment, so ordered and subsequently entered, plaintiffs appealed.

The first point raised by appellants is that the court had no right to order judgment for defendant Wilder, after having made and filed its findings in the case; that the defendants' only remedy, if error had been committed, was by motion for a new trial, or by appeal

from the judgment. The order of the court was equivalent to a change or amendment of its conclusions of law drawn from the facts found. We have no doubt of the right of the court to thus amend or correct its findings, at least any time before entry of judgment.

The next point made by appellants is that certain findings of fact by the court are not within the issues formed by the pleadings, and are contrary to the admissions contained in the answer, and therefore cannot be considered in the determination of the case. It will be observed, upon a comparison of the complaint, answer and findings, that no two of them adopt a common theory of the facts. The complaint is drawn upon the theory that Wilder and Charles were joint trustees under a declaration of trust in favor of plaintiffs, both in the boats and in the business of operating them. The answer of Wilder attempts to set up two defences—*First*, a denial of plaintiffs' interest in the vessels; and, *second*, that if they had any interest, it was entirely held by Charles as their trustee under a technical declaration of trust, and hence, if they have any cause of action, it is solely against their trustee, and not against him. The court finds, as we understand its findings, a state of facts different from either of these theories, and, so far as it finds a cause of action in favor of plaintiffs, it is really a different one from that set up in the complaint.

The plaintiffs, therefore, are not in position successfully to raise the objection that the court finds facts outside of the issues formed by the pleadings. This appeal is taken from the judgment, without any case or bill of exceptions. Every presumption is in favor of the findings, and it is for the plaintiffs, alleging error, to overcome these presumptions by showing error. This they do not do; they do not claim that the findings are not correct in fact, or that they were not fully sustained by evidence introduced upon the trial without objection. The presumption, under the circumstances, is that the questions of fact passed upon by these findings were litigated at the trial by consent, and that the findings themselves are not only correct in fact, but are sustained by evidence introduced at the trial without objection. Therefore, there is nothing in the case to take it out of the

general rule that, on appeal from a judgment after trial by the court, where no case is made, the only question presented for decision is, do the facts found sustain the judgment? This is the only question left for consideration.

The contention of respondent is that the findings of the court are to the effect that Charles alone was a trustee of an express trust for the benefit of plaintiffs, both as to the vessels and the business of using and operating them; and that, therefore, under the facts found, plaintiffs' cause of action is solely against their trustee, and not against Wilder, who is accountable alone to the trustee. But we do not think that the findings fairly admit of this construction. It is found that the plaintiffs were equitably part-owners of these vessels, to the extent alleged in the complaint, although the legal title was wholly in the defendants. It is well settled that the legal title and the equitable interest may be in different parties. *Scudder* v. *Calais Steamboat Co.*, 1 Cliff. 370; 2 Story's Eq. Jur. § 1207; also, that the several owners of vessels, although tenants in common as to the ownership of the vessels, are partners in regard to the earnings when they engage in the use of the vessels on joint account and profit of all concerned, and not merely in the employment of the vessel for freight. Story on Partnership, § 444; *Russell* v. *Minn. Outfit*, 1 Minn. 136 (162.) In this case the court has expressly found that "it was mutually agreed (between plaintiffs and defendants) that said boats should thereafter be operated by defendants, for the benefit of plaintiffs and defendants, according to their respective interests, and that the defendants should have control of said boats, and should manage said business."

If there had been any doubt before as to the rights of the parties in the earnings of the vessels, this finding settles the fact that the boats were to be operated on joint account, although the active management was to be left wholly with defendants. It is true that the court also finds that it was also agreed "that plaintiffs and their said interests should be represented therein by said Charles." This in no way changes the rights of the parties, except that it finds that Charles was to act as their agent in reference to their business, and if so, of course his acts within the scope of his agency would, until such authority was revoked, bind his principals. The court also finds that

"as a part of said transaction said Charles executed and delivered to plaintiffs" the instrument in writing set out at length in the findings already quoted. But, even if this amounts to a finding that Charles held the legal title to the vessels themselves under a declaration of an express trust in favor of plaintiffs, it has nothing to do with the business of the employment of the boats or their earnings, and is not inconsistent with the previous finding that it was agreed that the vessels should be operated on joint account. This action is not to reach the vessels themselves, but simply their earnings while thus operated on joint account.

The court, also, in substance finds that the boats were operated during the three seasons under this arrangement; Charles acting for himself and for the plaintiffs, but Wilder receiving and disbursing the money, and keeping the accounts. Now, whatever may be said as to the legal title of the vessels, yet, so far as the business of operating them is concerned, the sum and substance of these findings is that the vessels were operated by the parties on joint account as *quasi* partners, Charles acting as the agent of plaintiffs in the management of the business. The business has come to a close, and the plaintiffs, as equitable part-owners of the boats, and partners in the business of operating them, ask that their cotenants and copartners be required to account to them for their share of the profits of the joint enterprise. This, we think, they have a right to do, and we see no reason why they cannot call on defendant Wilder to account to them directly for what remains in his hands belonging to them, instead of so doing through Charles, or why Wilder should have the right to insist on accounting to an agent against the will of the principal. There is no reason why plaintiffs may nc terminate the authority of their agent, and take the matter into their own hands, at least since the business has terminated, and nothing remains to be done except to settle up past transactions.

The court having found that it was agreed that Charles should and that he did represent the plaintiffs, and act for them, in the conduct and management of the business, and his authority never having been revoked, at least until the commencement of this action, and no fraud, collusion or mistake having been found, the acts of Charles in

the premises are as binding upon plaintiffs as if done by themselves. We think the finding of the court as to his authority, especially when taken in connection with the other findings as to the manner in which the business was in fact transacted by and through Charles, amounts to a finding that Charles had full authority to settle with Wilder in behalf of plaintiffs, and receive from him their share of the profits of the business. Therefore, Wilder had a right to account to and settle with him, and pay over to him the share and interest of plaintiffs. We also consider the findings of the court as equivalent to a finding that there has been a settlement and account stated and agreed on between Wilder and Charles for the business of the years 1876 and 1877, and the amounts thus found due to plaintiffs fully paid over to Charles. This is the end of the matter, therefore, as to both of these years, and plaintiffs cannot reopen these settlements and accountings made by their own authorized agent, no fraud or mistake being shown.

But the business of the year 1878, the court finds, has been only partially settled and adjusted; that, so far as ascertained, the profits of the business for that year amounted to $247.28, but that, owing to certain matters being as yet unadjusted, a final accounting for that year was not practicable. From other findings of the court we understand that whatever there is or may be of the proceeds of the business of that year is still in the hands of Wilder. For reasons already given, we think plaintiffs have a right to ask him to account for and pay over to them, directly, their share of the $247.28, at least, and whatever more might be found belonging to them upon a final accounting, whenever that could be found; and for that purpose, in the language of the equity courts, "plaintiffs' bill should have been retained." For this reason we are of opinion the court erred, upon the facts found, in ordering judgment for defendant.

Judgment reversed, and cause remanded, with instructions to proceed to take an accounting of the business for the year 1878, in accordance with this opinion.