## STERLE F. SISCO, SPECIAL ADMINISTRATOR, SUBSTITUTED FOR ETHEL MAE SISCO, DECEASED, v. O. J. PAULSON, ALSO KNOWN AS OSCAR J. PAULSON.[1]

December 22, 1950.

No. 35,251.

*Benjamin Segal* and *Robert A. Dworsky,* for appellant.

*Archie L. Gingold* and *Briggs, Gilbert, Morton, Kyle & Macartney,* for respondent.

MAGNEY, JUSTICE.

In an action to quiet title, defendant appeals from an adverse judgment.

[1]Reported in 45 N. W. (2d) 385.

On March 23, 1944, defendant obtained judgment in Ramsey county against one Mabel Holdridge for $2,398.50. This was a renewal of an earlier judgment. Plaintiff claims that this judgment is not a lien against the real estate involved in the action because of its homestead character, and he seeks a judicial determination to that effect. Under facts to be recited later, defendant contends that his judgment is a lien upon the premises involved. He further claims that plaintiff's intestate, Ethel Mae Sisco, on or about June 10, 1948, offered to pay defendant $1,750 in full payment and settlement of the judgment; that he agreed to accept the same in full payment of his judgment; and that later she repudiated the agreement. In addition to having his judgment declared a lien on the premises, he asks judgment against plaintiff for $1,750 plus interest.

The premises were the homestead of Mabel Holdridge, and had been so since January 31, 1940. On March 31, 1947, she conveyed the same by warranty deed to Ethel May [sic] Sisco, a sister. On April 15, 1947, Mabel died. No living child or issue of a deceased child survived her. The deed was not recorded until April 17, 1947. On December 13, 1948, Ethel, the grantee in the deed, also died. From the middle of 1947 until her death, she had occupied an apartment in the premises conveyed to her.

■ M. S. A. 510.07 provides:

"The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in his hands."

So it is clear that Mabel had the right to convey her homestead to Ethel without subjecting it to defendant's judgment.

Whether there was consideration for the transfer is immaterial. Exempt property is not susceptible of fraudulent alienation, and creditors ordinarily have no right to complain of the disposition made of it, since they cannot be prejudiced thereby or claim that it is a fraud upon them. So far as exempt property is concerned, there are no creditors within the meaning of the statute. 24 Am.

Jur., Fraudulent Conveyances, § 109. This includes homestead property. Ferguson v. Kumler, 27 Minn. 156, 6 N. W. 618; Keith v. Albrecht, 89 Minn. 247, 94 N. W. 677; Redmond v. Hayes, 116 Minn. 403, 133 N. W. 1016; Thysell v. McDonald, 134 Minn. 400, 159 N. W. 958; Cysewski v. Steingraber, 222 Minn. 221, 24 N. W. (2d) 266.

The grantee of the homestead property acquires the title to the property exempt or immune from the claims of grantor's creditors. If such claims could not have been asserted against the property while the title remained in the grantor, they may not be enforced against the grantee. 26 Am. Jur., Homestead, § 124.

Defendant contends, however, that the property lost its exempt character upon the death of the grantor because the grantee failed to record her deed until after the death of the grantor, and he cites § 507.34, the recording statute, as the basis for his contention. He claims that the homestead exemption ceased at Mabel's death; that at that time his judgment lien became enforceable; and, since the Sisco deed was not yet on record, that the conveyance was "void" as against his lien as a judgment creditor.

Such a theory, if valid, would defeat every conveyance of a homestead free of the lien of a prior judgment. Necessarily there must be a lapse of time between the execution of the deed and the recording of it. When the deed had been executed and delivered, the grantor of the homestead premises had no longer any title to the premises, irrespective of whether the deed was recorded or not. That, however, does not permit the prior judgment lien holder to step in and say that his judgment attaches. It is obvious that § 510.07, the homestead exemption statute, must qualify § 507.34, the recording statute. As stated, as far as exempt property is concerned, homestead or any other property, there are no creditors within the meaning of the statute. When the owner sells or conveys it, it cannot be subjected to prior judgment debts. Assume that the owner of a homestead sold it and that the grantee paid full value for the premises but failed to put his deed on record. It does not seem possible that a prior judgment creditor of the grantor in such

a case would be permitted to step in and collect his judgment from the grantee by taking execution on the judgment and levying on the grantor's homestead premises, in which premises, up to the time of its transfer, he had no interest and no control over its disposition. We fail to see any validity in defendant's contention. If the authority to sell or convey a homestead is unlimited, how can that authority, in effect, be defeated by a prior judgment creditor of the grantor by the mere failure of the grantee to record his deed within the lifetime of the grantor, or within any certain time, or at any time as far as the judgment creditor is concerned?

■ Whether defendant had notice, actual or constructive, of the conveyance of the premises to Ethel is wholly immaterial. The validity of the sale of exempt homestead property cannot be influenced by whether a prior judgment creditor of the grantor knew that a sale had been consummated.

■ Defendant contends that on or about June 11, 1948, he and Ethel consummated an agreement whereby she promised to pay defendant $1,750, in consideration of which he promised, upon receipt of said sum, that he would fully and finally release his claim of a judgment lien on the premises in question. Claiming a breach of that agreement by failure to pay the agreed sum, defendant seeks recovery for $1,750. In other words, defendant claims that he has a lien on the premises involved in the action by reason of his judgment and that he is entitled to recover $1,750 of plaintiff for the breach of a claimed contract. Procedural difficulties arising out of this situation are apparent, but as both matters were litigated by consent in the court below and both claims are submitted here, we will consider only the merits.

Immediately after the service of the summons and complaint on June 4, 1948, defendant in some way got in touch with Ethel. On June 10, 1948, on stationery of defendant's attorney, she advised the Minneapolis Savings & Loan Association that she was settling the Paulson judgments for $1,750 and authorized it to pay "O. J. Paulson and Benjamin Segal, his attorney, the sum of $1750.00 out

of the proceeds of the loan which you are making on my property upon delivery to you of satisfactions of said judgments." She executed a mortgage to the loan company. It was not recorded. The two judgments specified in the above authorization were the original judgment and the renewal judgment. On the same day that Ethel wrote the above letter, defendant executed satisfactions of the two judgments, and defendant delivered them to the loan company. Nothing further happened, except that on June 22, 1948, plaintiff's intestate in writing withdrew her authorization to the loan association. Ethel's attorney knew nothing of the above arrangements.

From what we have said, defendant had no valid claim against plaintiff's intestate. From the manner of his efforts to secure payment of part of his judgment, it is evident that he knew he had no valid claim against her. There was therefore no consideration for any promise of compromise she might have made. The claim was baseless, and an agreement to compromise it lacked consideration. Peterson v. Hegna, 158 Minn. 289, 197 N. W. 484; Montgomery v. Grenier, 117 Minn. 416, 136 N. W. 9.

The above is sufficient to dispose of defendant's second claim. Also, without going into detail, it may be stated that the evidence is insufficient to show that the suggested agreement of compromise was consummated.

Judgment affirmed.