Stacy G. **JUETTEN, Appellant,**

v.

**LCA–VISION, INC., d/b/a LasikPlus Vision Center, a Delaware corporation, Defendant,**

**David Whiting, MD, Respondent.**

No. A09–683.

Court of Appeals of Minnesota.

Feb. 2, 2010.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN; and Mark A. Hallberg, Hallberg & McClain, St. Paul, MN, for appellant.

William M. Hart, Cecilie Morris Loidolt, Damon L. Highly, Meagher & Geer, L.L.P., Minneapolis, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; PETERSON, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

In this medical malpractice lawsuit based on injuries that allegedly arose from vision-correcting eye surgery, Stacy Juetten appeals the district court's dismissal of her claims against Dr. David Whiting. Juetten had referred to Dr. Whiting in her original complaint but added him to the suit as a defendant after she missed the 180–day deadline for serving the original, allegedly vicariously liable defendant, LCA–Vision, Inc., with expert witness affidavits required by Minnesota Statutes section 145.682, subdivisions 2(2) and 4. Juetten argues that she was entitled to a new deadline calculated from when she added Dr. Whiting as a defendant in the lawsuit and that she served her affidavits on Dr. Whiting before this new deadline. Because we conclude that Juetten's failure to serve the original defendant within 180 days could not be cured by a strategically amended pleading that merely elevated a previously named, allegedly negligent physician to status as a party, we affirm.

## FACTS

In July 2005, appellant Stacy Juetten went to the LasikPlus Vision Center in Edina for a preoperative assessment to determine if she was suited for vision-correcting eye surgery. Juetten's medical history indicated that she was diabetic and had a hyperactive thyroid. Poorly controlled diabetes and hyperthyroidism can diminish a patient's fitness for the surgery. But in Juetten's case, both conditions were under control with medication, and neither condition had damaged her eyes.

A physician examined Juetten's eyes and discovered superficial punctuate keratitis (SPK). SPK is a condition involving pinpoint inflammations on the eye's surface. The presence of SPK makes surgery less advisable because surgery can aggravate existing SPK and cause dry-eye syndrome. But Juetten's SPK was "trace"—the lowest level of SPK detectable—and could have resulted from the examination itself. Because Juetten's SPK seemed minimal and she had no history of dry-eye problems, the examining doctor informed her that she was a good candidate for surgery. The doctor also discussed with Juetten the potential common complications of surgery, including dryness and vision problems.

Juetten returned to LasikPlus Vision Center for her surgery, which was performed by Dr. David Whiting. Before operating, Dr. Whiting generally reviews a patient's medical records, examines her eyes, and determines whether she is a good candidate for surgery. Dr. Whiting was aware that Juetten had trace SPK in both eyes but did not discuss the potential cumulative effect of having SPK, diabetes, and a history of thyroid abnormality with Juetten before the surgery.

Within days after her surgery, Juetten developed severe SPK, dry eyes, and vision problems. After efforts to treat these problems failed, Juetten sued respondent LCA–Vision, which owned and operated LasikPlus Vision Center. Juetten based her claim against LCA–Vision on its vicarious liability for the alleged negligence of Dr. Whiting and the examining doctor, who she claimed had failed to recognize that her pre-existing conditions were contraindications to surgery and failed to treat her SPK or warn her of the risks of and alternatives to surgery.

A plaintiff in a medical malpractice suit must serve on the defendant, within 180 days after commencement of the suit, affidavits identifying the expert witnesses the plaintiff expects to testify on her behalf and the substance of the experts' testimony. Minn.Stat. § 145.682, subds. 2(2), 4 (2008). The penalty for noncompliance with the statutory requirement is mandatory dismissal with prejudice of "each cause of action as to which expert testimony is necessary to establish a prima facie case." *Id.*, subd. 6(b) (2008).

Juetten failed to serve LCA–Vision with the required affidavits within the 180–day deadline. LCA–Vision therefore moved to dismiss. Before the district court ruled on the motion to dismiss, however, Juetten served an amended complaint adding Dr. Whiting as a defendant based on his own alleged negligence. This amendment essentially changed Dr. Whiting's status from nonparty tortfeasor to liable tortfeasor for the same conduct that formed the basis of the procedurally faltering vicarious liability claim against LCA–Vision.

The district court held that there was no good cause to extend the 180–day affidavit-service deadline and granted LCA–Vision's motion to dismiss based on Juetten's failure to timely serve her expert affidavits. That same month, Juetten served expert affidavits on Dr. Whiting. Dr. Whiting moved to dismiss, arguing that the content of Juetten's expert affidavits did not comply with the substantive requirements of Minn.Stat. § 145.682. Dr. Whiting also moved for summary judgment on procedural grounds based on law of the case, res judicata, and collateral estoppel since the deadline-related basis for dismissal had already been established.

In February 2009, the district court granted Dr. Whiting summary judgment based on law of the case but stated that the substance of Juetten's expert affidavits would have satisfied the statute had they been timely served. Juetten appeals the grant of summary judgment. Dr. Whiting filed notices of review and challenges the district court's dicta approving the substance of Juetten's affidavits and its rejection of his alternative arguments for res judicata and collateral estoppel.

## ISSUE

Did the district court err by refusing to allow Juetten to avoid Minn.Stat. § 145.682's affidavit-service deadline by joining Dr. Whiting as a defendant?

## ANALYSIS

Juetten challenges the district court's grant of summary judgment that resulted in the statutory dismissal of her medical malpractice claim against Dr. Whiting. Where the material facts are undisputed, we review the district court's grant of summary judgment solely for errors of law. *Twaiten v. Tanke,* 466 N.W.2d 31, 34 (Minn.App.1991), *review denied* (Minn. Apr. 29, 1991). We recognize that "[a] trial court's dismissal of an action for procedural irregularities will be reversed on appeal only if it is shown that the trial court abused its discretion." *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 190 (Minn.1990). But in this case, section 145.682 leaves no room for the district court to exercise discretion. *See* Minn.Stat. § 145.682, subd. 6(b) (providing that a failure to serve affidavits within 180 days results in "mandatory dismissal"). The undisputed facts establish that Juetten missed section 145.682's deadline for serving LCA–Vision, and we review de novo whether the district court erred in concluding that the statute mandated dismissal on these facts.

Juetten argues that the expert affidavits served on Dr. Whiting in March 2008 were

timely under Minnesota Statutes section 145.682. The statute provides,

> In an action alleging malpractice ... against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must ... serve upon defendant within 180 days after commencement of the suit an affidavit [identifying the expert witnesses who are expected to testify].

Minn.Stat. § 145.682, subd. 2 (2008).

The terms "suit" and "action" are synonymous and denote a judicial proceeding. *See Vaubel Farms, Inc. v. Shelby Farmers Mut.*, 679 N.W.2d 407, 411 (Minn. App.2004) (defining a "suit" as "[a]ny proceeding by a party or parties against another in a court of law" (quoting Black's Law Dictionary 1448 (7th ed.1999))); Black's Law Dictionary 28 (7th ed.1999) (defining an "action" as "[a] civil or criminal judicial proceeding"). By contrast, a "cause of action" is "a group of operative facts giving rise to one or more bases for suing." *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 9 (Minn.2002) (quotation omitted).

Juetten's malpractice suit included a cause of action that required expert testimony to establish a prima facie case. This cause of action was Juetten's injury that resulted from LCA–Vision's agents' alleged breach of the applicable medical standard of care. Juetten was therefore required, within 180 days of the suit's commencement, to serve on LCA–Vision affidavits identifying the experts she expected to testify concerning that cause of action and providing the substance of their testimony. *See* Minn.Stat. § 145.682, subd. 2. The suit commenced when Juetten served her complaint on January 23, 2007, and the 180–day deadline passed on July 23. Juetten served LCA–Vision with affidavits on December 5, four months after the deadline.

If a medical malpractice plaintiff fails to serve timely expert witness affidavits, the defendant may move for dismissal. *Id.*, subd. 6(b). The result is "mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case." *Id.* LCA–Vision moved to dismiss in October 2007, and the district court dismissed Juetten's claim against LCA–Vision in March 2008. Before LCA–Vision's dismissal, however, Juetten transformed Dr. Whiting from alleged tortfeasor to party by adding him as a second defendant. The question therefore becomes whether Juetten's failure to timely serve LCA–Vision also required the dismissal of her claim against Dr. Whiting.

Juetten's original complaint alleged that LCA–Vision, through its employees, failed to recognize and treat Juetten's SPK or to adequately warn her of the surgery risks. This cause of action required expert testimony because it alleged a departure from medical standards of care. Juetten's amended complaint similarly alleges that Dr. Whiting departed from accepted medical standards of care. This is the same cause of action, requiring expert testimony to establish a prima facie case, and the district court properly dismissed it pursuant to section 145.682, subdivision 6 when Dr. Whiting sought dismissal.

At oral argument, Juetten's counsel raised a hypothetical scenario in which application of the statute in the manner we have just outlined could result in injustice. Counsel posited a case in which a medical malpractice plaintiff misses the 180–day deadline as to the original defendant and later discovers that her injuries were partly caused by the negligence of a third party who she had no reason to know was involved. In that situation, as Juetten's

counsel deftly emphasizes, it would seem unfair to apply the statute to bar the plaintiff from suing on the newly discovered cause of action.

But we will reserve judgment on that easily distinguishable hypothesized case for an appeal that mirrors it. Juetten's situation is significantly different. Juetten knew before filing her original complaint that Dr. Whiting participated in the events that led to her injuries. Her original complaint specifically named Dr. Whiting and the examining doctor as the employees whose alleged negligence should be imputed vicariously to LCA–Vision, and we know of no reason why Juetten could not have named Dr. Whiting as a party at the commencement of the suit. His alleged misconduct was unquestionably the centerpiece of both her original and amended complaints.

■ Counsel's hypothetical case does helpfully highlight what is already apparent: The statute's drafters did not expressly account for the joinder of additional defendants after a medical malpractice suit is commenced. The statute describes a plaintiff's obligation to serve affidavits in the singular—"plaintiff must ... serve upon defendant ... an affidavit." Minn. Stat. § 145.682, subd. 2. The legislative guidance for construing statutes is somewhat instructive here; we are asked to use the plural for the singular to give a statute effect. Minn.Stat. § 645.08(2) (2008). We are satisfied that the statute provides a single deadline for serving expert affidavits, regardless of whether the defendant to be served has been in the suit from the beginning or was added just before the deadline. The statute therefore applies clearly enough to the facts of this case, in which long after the initial affidavit-serving deadline had passed, the plaintiff tried to salvage her suit by adding a new defendant whose alleged professional errors were known to be central to the claimed liability.

Juetten also offers a rule-based argument. She contends that section 145.682's 180–day deadline is particular to each defendant and begins to run when an individual defendant is brought into the lawsuit. Her argument rests on Minnesota Rule of Civil Procedure 3.01, which provides that "[a] civil action is commenced against each defendant ... when the summons is served upon that defendant." She contends that a "civil action" commenced against Dr. Whiting, and the 180–day deadline started anew, in February 2008 when Dr. Whiting was served with the amended complaint naming him as a defendant. Juetten's March 2008 service of expert affidavits on Dr. Whiting was therefore timely, she argues.

Juetten provides no authority that rule 3.01's definition of "civil action" controls the meaning of the word "suit" in section 145.682. Other considerations suggest otherwise. Juetten's construction would direct us to inappropriately apply a procedural rule to circumvent a substantive statutory provision. *See Lombardo v. Seydow–Weber*, 529 N.W.2d 702, 705 (Minn. App.1995) (holding that plaintiff could not use voluntary dismissal under civil procedure rule 41.01 to avoid dismissal with prejudice under section 145.682), *review denied* (Minn. Apr. 27, 1995). And her interpretation ignores the statute's purpose of "eliminat[ing] nuisance malpractice suits" early in the process because it would allow a plaintiff to postpone providing affidavits by joining multiple additional defendants in sequence. *Id.* at 703. Under Juetten's theory, a plaintiff could tactically string a cause of action along without proof of a meritorious claim until long after the first 180 days, or even use discovery obtained from earlier dismissed defendants

to perfect litigation strategy against later-named targets.

Applying the statute as it somewhat imprecisely fits this case, we hold that Juetten was required to serve affidavits on LCA–Vision within 180 days of the commencement of the lawsuit. Her failure to do that has extended consequences. After LCA–Vision moved to dismiss, the mandatory remedy was dismissal of Juetten's cause of action against LCA–Vision and any other claims arising from that identical cause of action, which required expert testimony to establish a prima facie case. We hold that the district court did not err by dismissing Juetten's claim against Dr. Whiting when Juetten was aware of Dr. Whiting's conduct (and sought to hold a different defendant liable for that conduct) but chose to delay naming Dr. Whiting as a defendant until after she missed the affidavit service deadline.

This holding resolves the appeal. The parties also dispute whether the district court properly applied law of the case and whether the doctrines of res judicata and collateral estoppel apply to bar reconsideration of the affidavit-timeliness issue. Juetten's counsel casts doubt on whether any of these doctrines are suited to this case. But we may affirm a district court's grant of summary judgment if it can be sustained on any ground. *Winkler v. Magnuson*, 539 N.W.2d 821, 827 (Minn. App.1995), *review denied* (Minn. Feb. 13, 1996). Despite the strength of Juetten's arguments challenging the district court's indirect application of the affidavit statute, we do not address them because we have held that applying the statute directly warrants our affirmance.

Dr. Whiting filed a notice of review challenging the district court's suggestion that Juetten's affidavits would have satisfied the statute's requirements on the merits had they been timely. He argues that Juetten's expert witness affidavits lack factual foundation and fail to satisfy the particular substantive requirements of the statute. Because we affirm based on the affidavits' tardiness, we do not address Dr. Whiting's substantive argument.

## DECISION

The district court did not err by refusing to allow Juetten to avoid the dispositive consequence of her missing the statute's affidavit-serving deadline. Elevating a physician after the fact from his role in the original complaint as responsible agent to his role in the amended complaint as liable party for the same allegedly negligent conduct does not prevent dismissal. After Juetten missed the deadline and LCA–Vision moved to dismiss, the statute required the district court to dismiss each cause of action for which expert testimony was necessary to establish a prima facie case. The district court properly granted summary judgment and dismissed the action against Dr. Whiting.

**Affirmed.**