Linda Marie LaDonna DAHLIN,
Appellant,

v.

Randall Earl Thomas KROENING,
Respondent.

No. A09–1800.

Court of Appeals of Minnesota.

July 6, 2010.

C. Thomas Wilson, Mary Kay Mages, Matthew C. Berger, Gislason & Hunter LLP, New Ulm, MN, for appellant.

Jared D. Peterson, Tricia M. Niebuhr, Berens, Rodenberg & O'Connor, New Ulm, MN, for respondent.

Considered and decided by ROSS, Presiding Judge; STONEBURNER, Judge; and HARTEN, Judge.*

## OPINION

ROSS, Judge.

This case concerns the serial renewability of unsatisfied judgments for spousal maintenance arrearages. We must decide whether a judgment creditor can renew a previously renewed judgment for arrearages by bringing a civil action within ten years of the existing, previously renewed judgment but more than ten years after the first judgment. Linda Dahlin and Randall Kroening's 1978 dissolution judgment awarded Dahlin spousal maintenance. Kroening did not pay. In 1988 Dahlin brought an action on that judgment and obtained a new judgment for the arrearages. That judgment also went unpaid, so Dahlin brought a new action in 1998 and obtained a new judgment. In

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

2008 Dahlin filed an action on the 1998 judgment for a new judgment, but this time the district court "denied" Dahlin's complaint, believing that a spousal maintenance judgment could not be renewed more than once. We reverse because a renewed judgment carries no less weight than any other judgment and a judgment creditor can obtain a new judgment by civil action within ten years of the entry of an existing judgment.

## FACTS

Appellant Linda Dahlin and respondent Randall Kroening divorced in 1978. Their dissolution judgment ordered Kroening to pay Dahlin monthly spousal maintenance. Judgments generally expire after ten years. *See* Minn.Stat. § 541.04 (2008). Kroening did not pay, so Dahlin sued him within ten years in 1988 for failure to pay, and the district court entered a new judgment for $7,000 in Dahlin's favor in April 1988. Within ten years, Dahlin brought another action in March 1998. Kroening failed to answer, resulting in a default judgment in April 1998.

The 1998 judgment also remained unsatisfied for nearly ten years. In March 2008, Dahlin brought another action on the judgment seeking a new judgment with its own ten-year enforcement period. Kroening answered, maintaining that the judgment could not be renewed. Construing provisions of chapter 548 of the Minnesota Statutes, the district court agreed and concluded as a matter of law that Dahlin could not obtain a new judgment because more than ten years had passed since the first judgment. Dahlin appeals.

## ISSUE

Do Minnesota Statutes sections 541.04, 548.09, and 548.091, which together require judgment creditors to commence actions on judgments within ten years after the entry of each judgment but which expressly allow child support judgments to be renewed repeatedly, preclude a judgment creditor from bringing serial actions on a judgment for nonpayment of spousal maintenance?

## ANALYSIS

Three statutes independently impose a ten-year limitations period on actions on a spousal maintenance judgment. A ten-year limitations period exists generally for all judgments under Minnesota Statutes sections 541.04 and 548.09, subdivision 1 (2008), and a ten-year limitations period exists specifically for spousal maintenance judgments under section 548.091, subdivision 2 (2008). The district court concluded that these statutes prohibit an action to renew a previously renewed spousal maintenance judgment.

■ On this conclusion, the district court "denied" Dahlin's complaint seeking entry of a new judgment to redress Kroening's chronic failure to satisfy the judgment. Although a "denial" of a complaint is not expressly contemplated by the Rules of Civil Procedure, the parties agree that the district court's decision was essentially a *sua sponte* grant of summary judgment on a matter of law because the facts that led to the judgment are not in dispute. We agree. We review a district court's conclusions of law, construction of statutes, and application of the law de novo. *Yath v. Fairview Clinics, N.P.*, 767 N.W.2d 34, 40 (Minn.App.2009).

The supreme court has recently observed that a judgment creditor's action on an unsatisfied civil judgment to obtain a new judgment is a common means to obtain a new limitations period for enforcing the judgment: "Judgment creditors sometimes seek to renew an existing judgment by commencing a new civil action within the 10–year limitations period and obtain a

new judgment." *Shamrock Dev. Inc. v. Smith*, 754 N.W.2d 377, 380 n. 2 (Minn. 2008).

This cause of action to renew a judgment has long been part of the legal practice in Minnesota to accompany and ameliorate the strict statutory language limiting the life of a judgment to ten years. The extant English common law, as modified by English statutes passed before the American Revolution, was adopted as the common law of Minnesota in 1877. *Dutcher v. Culver*, 24 Minn. 584, 591 (1877). And under English common law as modified by statute at that time, the concept that "the defendant may not be liable to be ... harassed a second time on the same [judgment]" after the judgment had expired was limited by the plaintiff's right to bring an action before the judgment expired requiring "the defendant to show cause why the judgment should not be revived, and execution had against him." William Blackstone, 3 Commentaries *421 (1768). So as early as 1881, for example, the Minnesota Supreme Court addressed the strict statute "that a judgment shall survive and the lien thereof continue for the period of ten years, and no longer," and it remarked that a judgment creditor's action against a judgment debtor in the waning statutory period would be considered "a cause of action in order to obtain a new judgment." *Newell v. Dart*, 28 Minn. 243, 249–50, 9 N.W. 732, 733 (1881). Applying this practice seven years later to an action in which a prior "judgment was still a valid obligation when [the] action was commenced," the supreme court saw "no reason why" the judgment creditor "was not entitled to recover a renewed money judgment against the judgment debtor," and it partially reversed the district court's application of the statute of limitations barring that remedy. *Dole v. Wilson*, 39 Minn. 330, 333–34, 40 N.W. 161, 163 (1888).

The district court here did not mention the common law cause of action to renew a judgment. Instead, it decided that this court's decision of *Nazarenko v. Mader*, 362 N.W.2d 1 (Minn.App.1985), is the controlling authority and that under *Nazarenko* spousal maintenance judgment creditors are barred from bringing an action on an existing judgment in a series of judgments dating back more than ten years. But *Nazarenko* does not address the validity of an action for a new judgment served within the statutory period to enforce an existing judgment. *Nazarenko* concerned an entirely different matter—a judgment creditor's failure to bring an action on the judgment for "more than 11 years after the debt was to have been totally repaid and 15 years after the judgment and decree" that originally determined the obligation. *Id.* at 2. *Nazarenko* has no bearing here.

■ Kroening argues that Minnesota law prevents Dahlin from bringing an action to obtain a renewed judgment on the waning judgment. Despite the apparent regularity of the practice, the supreme court in *Shamrock* faced but did not address an argument that Minnesota does not allow the renewal of judgments through new civil actions brought within the ten-year limitations period. The *Shamrock* court assumed that the practice was lawful, finding no occasion to resolve the issue. 754 N.W.2d at 380 n. 2. We must resolve it here, and we hold that the practice of bringing an action to renew a judgment remains lawful.

Kroening offers three reasons in support of his contention that Dahlin may not bring an action to renew her judgment. He highlights that the Minnesota Statutes do not expressly authorize the practice. He next argues that by authorizing renew-

als of judgments for child support arrearages, the legislature implicitly prohibited renewals for spousal maintenance arrearages. And lastly, he maintains that public policy favoring finality of judgments prevents actions to renew judgments.

None of Kroening's arguments persuades us. Before addressing them directly, we must first clarify what is meant by a "new" judgment that results from an action on a prior judgment. The district court characterized Dahlin's action as one in which Dahlin "did not seek to create a new judgment, rather, [she] moved the [district court] for a second renewal of a judgment." But this distinction is not meaningful. The supreme court has referred interchangeably to the judgment resulting from an action on an unsatisfied judgment as a "renewal judgment," *Sisco v. Paulson*, 232 Minn. 250, 254, 45 N.W.2d 385, 388 (1950), as a "renewed judgment," *Dole*, 39 Minn. at 333, 40 N.W. at 163, and as a "new judgment," *Newell*, 28 Minn. at 250, 9 N.W. at 733. And the supreme court has specifically characterized "an action to renew a judgment" as "an action brought on a judgment." *Siewert v. O'Brien*, 202 Minn. 314, 314–15, 278 N.W. 162, 162–63 (1938). The characterization of Dahlin's action as one seeking a renewed judgment instead of one seeking a new judgment is therefore a semantic distinction that does not affect our analysis. Our reading of the caselaw informs us that a new judgment is just that: a *new* judgment. A new judgment obtained in an action to renew a prior judgment has the same legal character and effect as any other judgment. For this reason neither the caselaw nor logic indicates that a judgment creditor is limited to a single action to renew.

We also digress to address potentially distracting terminology included in two related opinions. We explained the process of renewing a judgment in *Shamrock Development Inc. v. Smith*, 737 N.W.2d 372, 376 (Minn.App.2007), by referring to a party's bringing an action "within ten years after entry of the *original* judgment," and on review the supreme court adopted that language and referred to commencing an action within the same "period for enforcement of the *original* judgment," 754 N.W.2d at 380 n. 2 (emphasis added). Despite the word choice, however, it is clear from the facts of that case that neither court intended its term "*original* judgment" to refer only to the first judgment in a series. Only one renewal occurred in that case, so both opinions applied to the existing judgment, which was "original" in relation to the renewed judgment at issue.

The dissent focuses at length on the word "original" in *Shamrock*, and it reasons that the term as it is commonly defined must be incorporated literally when we apply the holding of those cases. But we limit a holding only to the facts of the matter actually decided. Regardless of the wording in a judicial opinion, including its stated holding, a court's expressions that "go beyond the facts before the court" are dicta and are deemed to be merely "the individual views of the author of the opinion and not binding in subsequent cases." *Foster v. Naftalin*, 246 Minn. 181, 208, 74 N.W.2d 249, 266 (1956). So despite the dissent's urging otherwise, neither of the *Shamrock* opinions "held" that a party is prohibited from bringing an action on a renewed judgment the same way she can bring an action on a first judgment.

Turning to Kroening's specific arguments, we first address the concern that no Minnesota statute expressly authorizes a judgment creditor to bring an action on an unsatisfied judgment in order to obtain a new judgment. The common law has provided for a judicially recognized cause of action, which does not depend on legis-

lation. *See Larson v. Wasemiller*, 738 N.W.2d 300, 303 (Minn.2007) (recognizing that common law continues until modified expressly by statute). The common law cause of action to renew judgments developed within the context of, and has survived complementary to, the facially strict statutory limitations, and the legislature has acquiesced to that cause of action by its silence. We are persuaded that the long-standing judicial and legislative acceptance of the practice establishes that it is sufficiently rooted in the common law and that it does not require express statutory authorization. In *Dole* the supreme court demonstrated the validity of the practice by reversing district court decision that disregarded it.

■ Kroening next argues that by expressly allowing renewal in a specific circumstance, the legislature has implicitly disallowed the cause of action to renew a judgment in all other circumstances. The argument rests on the logical concept that *expressio unius est exclusio alterius*, or, the expression of the one is the exclusion of another. Kroening maintains that by expressly authorizing multiple renewals of child support judgments in Minnesota Statutes chapter 548—the chapter on judgments—while not including similar provisions for renewing judgments of dissolution decrees generally, the legislature indicated its intent to exclude the general practice. The argument is not convincing.

It is true that the statutes specifically direct that "[c]hild support judgments may be renewed multiple times until paid" but do not mention renewal of any other judgments related to dissolution decrees. *See* Minn.Stat. § 548.09, subd. 1 (providing that judgments survive for ten years and specifying that "[c]hild support judgments may be renewed pursuant to section 548.091"); Minn.Stat. § 548.091 (2008) (governing maintenance and child support

judgments and allowing multiple child support judgment renewals until paid (subd. 3b) without indicating multiple judgments for maintenance judgments). But for at least two reasons, the statutory references to multiple renewals of child support judgments do not indicate legislative intent to restrict multiple judgment renewals only to child support judgments.

The first reason is that the provision for multiple child support judgment renewals merely introduces an easier process for child support creditors to obtain a renewed child support judgment without appearing to restrict other judgment creditors from renewing other categories of judgments through civil actions to renew. *See Gerber v. Gerber*, 714 N.W.2d 702, 705 (Minn.2006) (concluding that section 548.091 "shows nothing more than the legislature recognized that judicial remedies on child support judgments are subject to the statute of limitations, and *that there must be an expedited process* to avoid its application") (emphasis added). The statutory development demonstrates the purely procedural purpose behind the special treatment of child support judgments. In 1993, the legislature added the following caveat to the general ten-year expiration for all judgments: "Child support judgments may be renewed by service of notice upon the debtor. Service shall be by certified mail .... Upon the filing of the notice and proof of service the court administrator shall renew the judgment ... without any additional filing fee." 1993 Minn. Laws ch. 340, § 50, at 2281. The legislature thereby eased the process of renewing child support judgments; unlike other judgment creditors, child support judgment creditors could avoid filing separate actions to renew the child support judgment. In 1999, the legislature struck all but the first six words of this new language from section 548.09 and directed the reader instead to

section 548.091. 1999 Minn. Laws ch. 245, art. 7, § 12, at 2565. The legislature simultaneously amended section 548.091 to include the easy administrative process to renew child support judgments, adding also that "[c]hild support judgments may be renewed multiple times until paid." 1999 Minn. Laws ch. 245, art. 7, § 16, at 2568. So the current direction in section 548.09 that "[c]hild support judgments may be renewed pursuant to section 548.091" and the declaration in section 548.091 that these judgments "may be renewed multiple times" does not indicate legislative intent to eliminate the cause of action to obtain renewals of all other types of judgments through separate suits; these sections merely ease the renewal process for one type of judgment without disturbing the settled practice to renew all others.

■ The second reason that we do not read the two procedural references in chapter 548 to renewal of child support judgments as demonstrating legislative intent to restrict renewal of all other judgments is that we presume that the legislature acts consistent with the common law. *See Urban v. Am. Legion Dep't of Minn.*, 723 N.W.2d 1, 10 (Minn.2006) ("[W]e presume that the legislature does not abrogate the common law unless it does so expressly or by necessary implication."). We will not construe a statute as having eliminated a common law remedy unless the legislature acts unambiguously. Reading the two procedural references as Kroening suggests would lead to the untenable conclusion that the legislature intended these minor statutory changes to quietly and incidentally undo a long-standing common law cause of action. The dissent's characterization that our holding somehow extends existing statutory law misconstrues our reasoning, which is that the legislative silence leaves intact common law actions on judgments to obtain new judgments.

■ We finally address the matter of public policy. Kroening argues that public policy favors the end of litigation and the finality of judicial decisions and that it compels us to affirm the district court's decision. And the dissent decorates the argument with a stirring fictional account from the imagination of Charles Dickens. But our opinion does not arise from, nor does it attempt to reshape, public policy. Rather, we are guided by the plain statutory language framed by settled caselaw allowing for actions to renew judgments. *See* Minn.Stat. § 645.16 (2008) ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under pretext of pursuing the spirit."). We therefore will not look behind the letter of the law in search of its spirit or for an interpretation that elevates matters of unstated public policy over the statute's plain meaning. *See Behr v. Am. Family Mut. Ins. Co.*, 638 N.W.2d 469, 479 (Minn.App.2002) (construing legislation on its plain language and refusing to consider the alleged spirit or public policy behind the law), *review denied* (Minn. Apr. 23, 2002). Nor will we rely on our sense of good policy to put precedent aside.

But we do not think public policy would demand a different result. Kroening's focus on the need for finality ignores the need for fairness. His argument implies that public policy favors allowing unsatisfied judgments to die on the vine for the sake of completion. Conceding that public policy encourages finality, we also observe that public policy encourages meaningfulness of judicial judgments, such as the ones Kroening has failed to satisfy. So even if public policy were our basis, in a public policy contest between the plight of

nonpaying judgment debtors and the plight of unpaid judgment creditors, we cannot say that judgment debtors would necessarily inspire the most sympathetic narratives.

The dissent concludes that our opinion today creates new law and "usurps the roles of the legislature and the supreme court." This is a bleak but, thankfully, inaccurate assessment. We do not usurp the legislature's role by exactingly interpreting its enactments or by refusing to read into them a prohibition they do not state. And we do not usurp the supreme court's role by carefully interpreting its holdings or by refusing to read into them a meaning they do not carry. We are duty-bound to honor settled precedent, which in this case establishes a cause of action that Blackstone recognized in England 70 years before Dickens penned his first novel, and that our supreme court recognized in Minnesota 100 years before the court of appeals issued its first opinion.

## DECISION

The common law cause of action on an unsatisfied judgment to obtain a new judgment is an action on a judgment under Minnesota Statutes section 541.04. The statutory requirement that judgment creditors commence actions on judgments within ten years after the entry of each judgment includes Dahlin's action to renew her 1998 judgment against Kroening, originally arising from maintenance arrearages. The district court therefore erred by "denying" Dahlin's complaint.

**Reversed.**

HARTEN, Judge (dissenting).

I respectfully dissent. In my view, the majority's opinion exceeds the scope of this court's authority and violates the principle of finality of judgments.

"[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. 18 Dec. 1987). The legislature has determined that, generally, a judgment may be enforced within ten years of its entry. Minn.Stat. § 550.01 (2008). The legislature has specifically applied this determination to maintenance judgments. *See* Minn.Stat. § 548.091, subd. 2 (2008) ("[A maintenance] judgment survives ... for ten years after its entry."). The legislature has equally specifically exempted child-support judgments from the determination. *See* Minn.Stat. § 548.091, subd. 3b (2008) ("Child support judgments may be renewed multiple times until paid.").

Thus, the legislature both explicitly, in Minn.Stat. § 548.091, subd. 2, and implicitly, in Minn.Stat. § 548.091, subd. 3b, restricted maintenance judgments to ten years: the exemption of child-support judgments from the ten-year period implies that other judgments are not exempt. *See Nelson v. Productive Alternatives, Inc.*, 715 N.W.2d 452, 457 (Minn.2006) (explaining that the canon of statutory construction "expressio unius est exclusio alterius" means that the expression of one thing is the exclusion of another). Extending the existing law provided by the legislature is not the province of this court. *Tereault*, 413 N.W.2d at 286; *see also Ullom v. Indep. Sch. Dist. No. 112*, 515 N.W.2d 615, 617 (Minn.App.1994) (holding that a court may not add to a statute what the legislature deliberately omitted or inadvertently overlooked). The majority opinion, in effect, extends the legislature's provision of multiple renewals for child-support judgments to maintenance judg-

ments.[1]

Moreover, the appellate courts have also addressed the issue of renewal of judgments and determined that *one* renewal is permissible. This court held that "[a] party may bring a civil action to renew a judgment, provided that the action is commenced within ten years after entry of the *original* judgment and the party complies with all the requirements for commencing a civil action."[2] *Shamrock Dev., Inc. v. Smith*, 737 N.W.2d 372, 374 (Minn.App. 2007) (emphasis added), *rev'd on other grounds*, 754 N.W.2d 377 (Minn.2008); *see also Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 380 n. 2 (Minn.2008) (assuming "without deciding that a civil judgment may be renewed by the entry of judgment in a new civil action commenced within the statutory limitations period for enforcement of the *original* judgment" (emphasis added)).

The majority argues that the word "original" in "original judgment" does not mean "first." But "original" is defined: "1. Preceding all others in time, first." *The American Heritage College Dictionary* 963 (3d ed. 1997); *see also Black's Law Dictionary* 1134 (8th ed. 2004) (defining "original source" as "[t]he person or persons who first disclosed fraud to the government"). "First" is an accepted meaning of "original."

The majority not only rejects "first" as a synonym for "original"; it adopts "any," arguing that, because the *Shamrock* cases do not specify that they concern the renewal of "only" original judgments, they concern the renewal of any judgments.

But "original" is arguably an antonym for "any"; "original" denotes a specific entity, not a generic entity. Our statutes, rules, and caselaw reflect this usage. *See, e.g.,* Minn.Stat. § 15B.01(4) (2008) (including in purposes of Capitol Area Architectural and Planning Board "to establish a flexible framework for growth . . . in keeping with the spirit of the original design"); Minn. R. Civ. P. 5.01 (referring to "the original complaint"); Minn. R. Evid. 1002 (requiring production of "original" writing, recording, or photography to prove content); *State v. Lessley*, 779 N.W.2d 825, 834 n. 8 (Minn.2010) (referring to provisions of "original" Constitution); *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 297 (Minn.2010) (referring to "original" defendants, i.e., defendants in underlying action, as opposed to their insurer, defendant in the case on appeal); *S.M. Hentges & Sons v. Mensing*, 777 N.W.2d 228, 231 n. 1 (Minn.2010) (noting relevance of headnote depends on its presence in "original" legislative process); *DeRosier v. Util. Sys. of Am., Inc.*, 780 N.W.2d 1, 8 n. 4 (Minn.App.2010) (referring to "original" contract as opposed to new agreement between parties); *QBE Ins. Corp. v. Twin Homes of French Ridge Homeowners Ass'n*, 778 N.W.2d 393, 395 (Minn.App. 2010) (referring to unavailable shingles of "original" roof); *Vickla v. State*, 778 N.W.2d 354, 356 (Minn.App.2010) (referring to "original" as opposed to amended criminal charge), *review granted* (Minn. Apr. 20, 2010); *Carse v. State*, 778 N.W.2d 361, 362 n. 2 (Minn.App.2010) (noting after seeing defendant in handcuffs, "original venire was replaced with a new panel"),

---

1. I do not address whether public policy supports or refutes permitting maintenance judgment creditors the same right as child-support judgment creditors: that question is irrelevant. "Because this court is limited in its function to correcting errors it cannot create public policy." *LaChapelle v. Mitten*,

607 N.W.2d 151, 159 (Minn.App.2000), *review denied* (Minn. May 16, 2002).

2. This quotation is taken from the syllabus; it cannot be argued that the quoted material is merely *dicta*.

*review denied* (Minn. Apr. 20, 2010); *Juetten v. LCA–Vision, Inc.,* 777 N.W.2d 772, 774 (Minn.App.2010) (referring to "original" corporate defendant), *review denied* (Minn. Apr. 28, 2010); *Hennepin County v. Hill,* 777 N.W.2d 252, 257, 258 (Minn. App.2010) (referring to "original" child support order, as opposed to subsequent orders).

It is for the supreme court, not this court, to state that "original" is being used in a sense other than the accepted sense in a supreme court opinion. The majority usurps the roles of the legislature and the supreme court by extending existing law.

Moreover, the majority's opinion contravenes the basic principle of finality of judgments that "is a cornerstone of our judicial system." *Harris v. Martin,* 834 F.2d 361, 366 (3rd.Cir.1987). Minnesota appellate courts have repeatedly endorsed this principle. *See, e.g., In re A Petition for Instructions to Construe Basic Resolution 876 of the Port Auth. of the City of St. Paul,* 772 N.W.2d 488, 496 (Minn.2009) (quoting 7 Moore, *Federal Practice* ¶ 60.27 (2d ed. 1955) for the proposition that there is a "general desirability that judgments be final"); *Kaiser v. State,* 641 N.W.2d 900, 903 (Minn.2002) (noting in the criminal-law context that "[p]ublic policy favors the finality of judgments"); *Nussbaumer v. Fetrow,* 556 N.W.2d 595, 599 (Minn.App. 1996) ("[P]ublic policy favors the finality of judgments and the ability of parties to rely on court orders."), *review denied* (Minn. Feb. 26, 1997). Particularly in the marriage dissolution context, "the need for finality becomes of central importance." *Shirk v. Shirk,* 561 N.W.2d 519, 522 (Minn. 1997) (noting that "[t]he legislature also has recognized the importance of finality in dissolution proceedings" by enacting Minn.Stat. § 518.145, subd. 2, to set out specific requirements for reopening dissolution judgments).

There is no finality to a judgment when the party to whom it was awarded is never required to either enforce it or lose it. The majority opens the door to maintenance judgments that share the traits of the judicial process deplored by Charles Dickens in *Bleak House:*

> Jarndyce and Jarndyce drones on. This scarecrow of a suit has, in course of time, become so complicated, that no man alive knows what it means. The parties to it understand it least; but it has been observed that no two Chancery lawyers can talk about it for five minutes, without coming to a total disagreement as to all the premises. Innumerable children have been born into the cause; innumerable young people have married into it; innumerable old people have died out of it. Scores of persons have deliriously found themselves made parties in Jarndyce and Jarndyce, without knowing how or why; whole families have inherited legendary hatreds with the suit. The little plaintiff or defendant, who was promised a new rocking-horse when Jarndyce and Jarndyce should be settled, has grown up, possessed himself of a real horse, and trotted away into the other world. Fair wards of court have faded into mothers and grandmothers; a long procession of Chancellors has come in and gone out; the legion of bills in the suit have been transformed into mere bills of mortality; there are not three Jarndyces left upon the earth perhaps, since old Tom Jarndyce in despair blew his brains out at a coffee-house in Chancery Lane; but Jarndyce and Jarndyce still drags its dreary length before the Court, perennially hopeless.

Charles Dickens, *Works of Charles Dickens* vol. VII, *Bleak House* 4 (Andrew Lang et al. eds., Collier Press, 1911).

I would affirm the district court's decision.